[No. 1945]

# INDIANA NEVADA MINING COMPANY, RESPONDENT, *v.* GOLD HILLS MINING AND MILLING COMPANY, APPELLANT.

1. APPEAL AND ERROR—FINDINGS—CONFLICTING EVIDENCE.
   A finding on conflicting evidence is conclusive on appeal.

2. MINES AND MINERALS—PATENTS—PRIORITIES.
   Where prior to the patent survey of a second mining claim and the moving of its line, the end of the line of the original claim was, on the making of the patent survey for that claim, moved so as to correspond with the call in the location notice and certificate, the owners of that claim have priority.

3. MINES AND MINERALS—LOCATIONS—FILING OF CERTIFICATE.
   Failure to properly file a certificate or amended certificate of location does not affect the rights thereunder, but merely changes the burden of proof.

4. MINES AND MINERALS—CLAIM EXTINGUISHED, WHEN.
   The patenting of a mining claim containing within its surface boundaries, as patented, the location monument and shaft of another claim extinguishes the latter.

5. MINES AND MINERALS—ATTEMPTED AMENDMENT OR RELOCATION OF EXTINGUISHED CLAIM, EFFECT.
   Vacant ground, formerly a portion of a location which has been extinguished by having its location monument and shaft included within the exterior boundaries of a patented claim, may not be held as an amended location of the original extinguished claim, but such an amended location or relocation of the original claim will be regarded as a new and independent location, and no rights can attach thereto by virtue of the extinguished location.

6. MINES AND MINERALS—LOCATION—ABANDONMENT.
   Abandonment of a location is largely, if not entirely, a question of intent.

7. MINES AND MINERALS—LOCATION—FORFEITURE.
   Forfeitures are not favored by the law, and are held to exist only when the facts clearly justify, so that the forfeiture of a mining location will not be declared merely because of the removal of the location monument where there was no intention to abandon.

APPEAL from the Fifth Judicial District Court, Nye County; *M. R. Averill*, Judge.

Suit by the Indiana Nevada Mining Company against the Gold Hills Mining and Milling Company. From a judgment for plaintiff, defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*John R. Smith* and *S. L. Carpenter*, for Appellant:

The Indiana No. 1 was a valid location taking in all the ground to the true end of the Conservative, and including the disputed area. The location notice of the Indiana No. 1 properly called for 300 feet on each side of the middle of the vein. The law as it stood at that time gave to the locators ninety days within which to mark their boundaries and definitely establish the lines of their claim. They had made their discovery upon a vein plainly discernible upon the surface, and having an average obvious width of at least 100 feet between walls, and so long as they did not interfere with or prejudice the rights of others, they had a right in monumenting and defining their claim to take for that claim the full width of 600 feet allowed by law, taking it, however, at their peril should it be found that the course of the vein departed from a straight line through the claim and left an excess location by reason of a portion of the claim being more than 300 feet from the middle of the ledge at the surface. Subject only to these exceptions these locators had a perfect right as against all the world to claim a piece of ground 1,500 feet long by 600 feet wide, and taking in the vein or ledge which they had discovered. At all the times when each and every of these things were done by the Indiana No. 1 locators, the south end-line of the Conservative was definitely established and marked upon the ground at and along the line found by the court and marked upon the plat as A, B, C projected across the claim. All the rights that the Conservative had or could have ended at that line, and this record will be searched in vain for any lawful act or thing at any time done or performed, or any location made having the effect of extending the area of the Conservative lode claim beyond that line and over the disputed area in this case.

The court below rested its rulings upon the findings of fact made by it to the effect that there was a strip on the east side of the Indiana No. 1 which was an excess location, expressly upon the case of *Taylor* v. *Parenteau*, 23 Colo. 368. We contend that *Taylor* v. *Parenteau* is not

at all applicable to the facts found in this case, because it was a decision which rests upon the expressed terms of a statute entirely different from the laws of Nevada. The federal statute clearly fixes a maximum surface area, which no claim shall exceed, and also a minimum width, but as to the width it has been the uniform holdings of the courts that the width is subject to the action of the states or the proper mining regulations of miners where such regulations are enforced or authorized. (Snyder on Mines, sec. 115; Stats. 1897, pp. 103–109.)

This statute was absolutely complied with, and the court has so found, by the locators of the Indiana No. 1, and it was a matter of indifference so far as the width of the claim was concerned at which point on the claim their discovery shaft was situated, so long as it was a discovery upon the vein. In Colorado the location of the discovery shaft was given a vital bearing on the width of the claim; in Nevada it was not; and this essential difference takes away from the authority relied on by the court its entire force and effect within this jurisdiction. Besides that, this court by a long series of decisions has adhered to the more liberal rule of ascertaining, declaring and marking the boundaries and surface rights of mining claims than this decision would allow. (*Golden Fleece* v. *Cable*, 12 Nev. 329; *Phillpotts* v. *Blasdel*, 8 Nev. 61; *Nash* v. *McNamara*, 30 Nev. 114; *Erwin* v. *Perego*, 93 Fed. 608.)

The overlapping of the Indiana No. 3 in no way concerned the Conservative, nor would any shifting of the lines, even had it occurred, concern them, because the two Indianas were owned by the same parties, and as among themselves they had a right to adjust or change their lines. (*Tonopah* v. *Tonopah*, 125 Fed. 389, 400, 408.)

The court erred in basing rights upon an excluded certificate. (*Ford* v. *Campbell*, 29 Nev. 578.)

No question is made as to the validity of the Indiana No. 2 location, the only finding being that its rights are junior to those of the Conservative as defined by its survey for amended certificate. The Conservative had

set its stakes so as to take in this ground before it was relocated, but it had not done one thing necessary to make it part of that claim—filed with the district recorder an amended location certificate—nor has it done so to this day.

The court gives the ground to the Conservative by virtue only of its arbitrary extension of its lines and resetting of its monuments, done, and found to be done, without compliance with an essential requirement of the law.

*Thomas, Bryant, Nye & Malburn* and *Bartlett & Thatcher,* for Respondent:

The right of a locator to change his boundaries and take in additional ground, if he so desires, is fixed beyond controversy, and this irrespective of whether or not he files an amended location certificate. (*Duncan* v. *Fulton,* 61 Pac. 244; *Bunker Hill Co.* v. *Empire Co.,* 134 Fed. 268; *Brown* v. *Oregon Co.,* 110 Fed. 728; *Hall* v. *Arnott,* 22 Pac. 200; *Jordan* v. *Schuerman,* 53 Pac. 579; *Deeney* v. *Mineral Co.,* 67 Pac. 724; *Morrison* v. *Regan,* 67 Pac. 956; *Butte Co.* v. *Barker,* 89 Pac. 302.)

There being no necessity for filing a location certificate in this state, the boundaries of the Conservative as against all subsequent rights were fixed at least in January, 1907.

Looking at the Indiana No. 2 we find that this claim was located originally, so it is claimed, in February, 1905. At that time it was immediately north of the Indiana No. 3, and covering substantially the same ground as the Bimetallic No. 3, and the court will note from the map that this did not conflict with the Conservative. This is as near as we can get at the so-called original location of the Indiana No. 2. No one pretended to give its boundaries with any degree of accuracy. The Bimetallic claim ceased to exist long prior to the survey, for No. 3 went to patent in 1906 and took in the discovery shaft, the location monument, and substantially all of the ground of the original Indiana No. 2. There can be no rights of any

description claimed of the Indiana No. 2, except from the date of November 28, 1908, nearly two years subsequent to the placing of the final stakes upon the Conservative.

By the Court, NORCROSS, J.:

This is a suit brought under the provisions of section 2326, U. S. Revised Statutes (U. S. Comp. St. 1901, p. 1430; Rev. Laws, 2384), upon an adverse claim and protest filed in the United States Land Office at Carson City,

Nevada, against the application of the respondent for a patent to the three mining claims named "Indiana No. 1," "Indiana No. 2," and "Indiana No. 3," embraced in survey No. 3,654. Respondent, as plaintiff in the court below, alleged ownership of the "Conservative claim," embraced in survey. No. 3,201, and that the same was located prior

to any of the said Indiana claims, and that respondent is entitled to the area in conflict between the said "Indiana" claims and the said "Conservative" claim. An answer was filed putting in issue the material allegations of the complaint. A diagram accompanying appellant's brief is inserted (p. 162) showing substantially the area in controversy, only that portion of which shown in black is now questioned on this appeal by appellant.

The court below found the facts of the case as follows:

"First—That the Conservative lode mining claim was duly located under the laws of the State of Nevada and the United States on the 23d day of January, A. D. 1905, and since that time has been maintained as a valid location under said laws.

"Second—That the Indiana No. 1 lode mining claim was duly located under the laws of the State of Nevada and the United States on or about the 17th day of February, A. D. 1905, and has been maintained as a mining location from that time to the present.

"Third—That, as originally located, the Indiana No. 1 lode mining claim lay about 100 feet west of its present position as shown by its patent survey.

"Fourth—That, before the boundaries of the Indiana No. 1 were defined by stone monuments, the south boundary of the Conservative lode mining claim had been defined by two stone monuments, one at its southwest corner about 79 feet north of its present southwest patent post, and the other at a point south 17° 41' west 151 feet slope measurement from post No. 3, survey 3,049, K. K. No. 1 lode.

"Fifth—That, before the boundaries of the Indiana No. 1 were defined as shown by its patent survey, the boundaries of the Conservative had been defined by posts set very nearly in the positions the posts of its patent survey now occupy.

"Sixth—That the Indiana No. 2 claim in its present status is junior to the Conservative claim as defined by its survey for amended certificate."

It is the contention of appellant that the portion of

ground in question should have been determined to be a part of the Indiana No. 1, and that if not found to be within the exterior boundaries of that claim, as originally located, it was then a portion of the No. 2 location.

[1] The only finding questioned by the appellant is the third quoted, *supra*. This finding was based on conflicting evidence, and under the well-established rule is conclusive on this court. It would seem that the court below held as a matter of law, and it is so contended by counsel for respondent in this appeal, that the location monument as originally placed and maintained, until moved a hundred feet, more or less, to the east at the time of the patent survey, fixed the center of the lode or vein for the purposes of the location; that the lode line must be deemed to pass through the point covered by that monument, and that the side lines of the claim may not be placed more than 300 feet therefrom. This very interesting question of law we need not consider, for the court found as a fact that the claim, as originally marked on the ground, had its easterly side line substantially 300 feet easterly of a line passing through the discovery monument as established at the date of the location.

[2] As the patent survey of the Conservative was made in January, 1907, and the south end line of the claim was moved to the south of the line originally monumented to correspond with the call in the location notice and certificate prior to the patent survey of the Indiana No. 1, and the moving of the easterly side line of that claim to the east, it follows that the owners of the Conservative claim have a better right than the owners of the Indiana No. 1 to the ground in conflict occasioned by such changes in the boundaries of the respective claims.

[3] Counsel for appellant contend that the court below based the rights of the respondent to the area in question upon an excluded amended certificate of location of the Conservative claim filed with the county recorder, but not with the district recorder after the patent survey. Failure to properly file a certificate or amended certificate of location only shifts the burden of proof, and in this case there

was proof, independent of the excluded certificate, upon which the court undoubtedly relied, showing the changes made in the southerly end line of the Conservative. (*Ford v. Campbell*, 29 Nev. 578, 92 Pac. 206.)

[4] Appellant's contentions based on the Indiana No. 2 location are also, we think, without merit. When the Indiana group of claims was located on February 17, 1905, the No. 2 claim was located immediately to the north of No. 3, and covering in the main the Bimetallic No. 3 claim, shown on the diagram. During the year 1906 the owners of the Bimetallic No. 3 received a patent for the latter claim, which claim as patented contained within its surface boundaries the location monument and shaft of the Indiana No. 2. The effect of this was to extinguish the Indiana No. 2 as a valid location.

[5] At the time of the patent survey of the Indiana claims, November 28, 1908, a small fraction of vacant ground was found to the north of the Indiana No. 3 and to the west of the Bimetallic. This was located by the owners of the Indiana claims. It was called a relocation of the Indiana No. 2, and an amended certificate of the certificate of the original location filed. We think the Indiana No. 2 claim must be regarded as a new and independent location, and that no rights can attach thereto by virtue of the extinguished location of the claim of the same name. As it is subsequent in time to the patent survey of the Conservative claim, the owners of the latter claim have a superior right to the ground in question as against any rights based on the Indiana No. 2 location.

[6, 7] This disposes of the question raised by the appellant on this appeal. Counsel for the respondent have assigned " cross-errors," and contend that we should sustain their contention that the locations of both the "Indiana No. 1" and the "Indiana No. 2" locations are void. If we concede, without so deciding, that respondent is entitled to raise these questions, nevertheless, under the view we have taken of the No. 2 location, its validity is immaterial to respondent. The alleged invalidity of the No. 1 location is based upon the contention that

the removal of the location monument of the claim at the time of the patent survey was in effect a forfeiture or abandonment of the claim, as it left the claim without a valid location monument. This contention is clearly without merit. Abandonment is largely, if not entirely, a question of intent, and here the intent was manifestly to the contrary. Forfeitures are not favored in the law, and are only held to exist when facts clearly justify. No facts warranting the holding of a forfeiture of the "Indiana No. 1" claim appear in this case.

The judgment and order appealed from are affirmed.