[No. 1727.]

## JAMES G. FORD, ET AL., RESPONDENTS, *v.* WILLIAM CAMPBELL, ET AL., APPELLANTS.

1. MINES AND MINERALS—LOCATION—NOTICE—RECORD. Comp. Laws, 210, provides that within ninety days of posting the location notice on a mining claim the locator shall record his claim with the mining district recorder and the county recorder of the mining district or county in which such claim is situated by location certificate; that any record of the location of a lode mining claim which shall not contain all the requirements named in the section shall be void, etc.; and section 232 provides that, if there is no mining district, or the residence of the officers within the district is not publicly known, district recording shall not be required. *Held*, that, where there is a mining district recorder whose place of business is publicly known, it is essential to a valid record of a mining claim that the certificate of location be recorded with the district recorder, as well as with the county recorder.

2. SAME—DESCRIPTION. Where the certificate of location of a mining claim described it as situated about two miles from a certain town, without giving any direction, such description did not constitute a substantial compliance with Comp. Laws, 210, requiring a description of the location of the claim with reference to some natural object or permanent monument.

3. SAME—NECESSITY OF RECORD. Recording of a certificate of location of a mining claim is not made an essential requisite to a valid location by the laws of the United States.

4. SAME—STATUTES. Comp. Laws, 231, provides that certificates of location and of labor and improvements necessary to hold claims need not be sworn to, but must truly state the required facts. *Held*, that the words "necessary to hold claims" did not refer to "certificates of location," but only to the words "labor and improvements," which referred to the provisions of the federal statutes requiring the expenditure of $100 annually in labor or improvements in order to hold a mining claim prior to the issuance of patent.

5. SAME—NECESSITY OF RECORD. Comp. Laws, 210, provides for the recording of a location certificate of a mining claim, and declares that such record shall be "*prima facie*" evidence of the facts therein stated. Section 216 declares that the amount of work done or improvements made during each year to hold possession of a mining claim shall be that prescribed by the laws of the United States, and section 231 declares that certificates of location and of labor and improvements necessary to hold claims need not be sworn to, nor be in any specified form, nor state facts in any specific order, but must state the required facts. *Held*, that the recording of a certificate of location of a mining claim was not essential to the validity of a location.

6. SAME—ABANDONMENT—RELOCATION. Plaintiffs located a mining claim and performed certain work which on survey they discovered was on conflicting territory, whereupon they posted a notice to the effect that

they abandoned such work. They did not remove their first notice from the location monument, and a so-called notice of relocation stated that the claim was relocated to better describe the place of the lode claim. *Held*, that such facts were insufficient to indicate an abandonment of their rights under the prior location.

7. APPEAL—FINDINGS—CONFLICTING EVIDENCE. A finding based on conflicting evidence will not be set aside on appeal.

APPEAL from the District Court of the Third Judicial District of the State of Nevada, Nye County; *Peter Breen*, Judge.

Action ,by James G. Ford, *et al.*, against William Campbell, *et al.* From a judgment in favor of plaintiffs, and from an order denying defendants' motion for a new trial, defendants appeal. **Affirmed.**

The facts sufficiently appear in the opinion.

*Campbell, Metson & Brown*, and *Augustus Tilden*, for Appellants:

I. Popularly the term relocation is applied indiscriminately to amendments in the ordinary sense and relocations in the strict sense. Even the statute is, in the loose language employed, but not in the substance of the enactment, at fault in this respect. Section 213, Comp. Laws, under the caption "Defective Certificate—Relocation," permits the filing of an additional certificate. When? Not when, by the loss of discovery, as here, a claim has ceased to exist, but when "the locator * * * shall apprehend that his original certificate was defective, erroneous, or that the requirements of the law had not been complied with before filing; or shall be desirous of changing his surface boundaries, or of taking in any part of an overlapping claim which has been abandoned." In contradistinction to this, section 214, under the title "Relocation—Work To Be Done," provides for the "relocation of abandoned lode claims." If the loss of discovery on the Ella May worked an abandonment, then by compliance with the provisions of section 214 alone could the locators reappropriate the ground. That they lost their discovery by so drawing in their south end-line as to exclude their original location shaft is undisputed. We submit that the loss of dis-

covery worked an abandonment of the claim in the sense of section 214. (Morrison, Mining Rights, 40; *McGinnis* v. *Egbert*, 8 Colo. 54; *Micheal* v. *Mills*, 45 Pac. 429.) The ground has reverted to the public domain. There was nothing to amend. Any stranger might, upon the theory that the original Ella May location was void, have lawfully imposed an entirely new location upon the ground, or, by recognizing the validity of the original Ella May, but treating it as abandoned, have erected a relocation thereon.

II. The relocation was not initiated upon discovery and no discovery was made prior to the intervening of defendants' rights. It may be that discovery at any time prior to the intervening of a hostile location will relate back to the date of location, but that there must at some time have been a discovery is elementary. "The fact of discovery must be proved by the party alleging it as the inception of his possessory right. While a location is made without discovery the land remains public domain until there is a discovery. (Morrison, Mining Rights, 30; *Sands* v. *Cruikshank*, 87 N. W. 589; *Tuolumne Co.* v. *Maier*, 66 Pac. 863.)

III. The discovery vein, if any, was not cut at a depth of ten feet. We are not now dealing with the question of the sufficiency of the location work, but with the mandatory provision of the statute that the "lode must be cut at a depth of ten feet." (Comp. Laws, 209.) The statute requiring a depth of ten feet is a valid exercise of the right of regulation allowed to the legislature under the congressional act. (*Sissons* v. *Sommers*, 24 Nev. 379.) It will be noted that the depth at which the vein must be cut is ten feet from the lowest part of the rim. (Comp. Laws, 209.)

IV. The location work was insufficient in amount. The work should have equaled in amount a location shaft 4×6×10 feet, or 240 cubic feet. (Stats. 1903.) The evidence shows without conflict that cut No. 2, at the time defendants' rights intervened, did not equal 240 cubic feet. We say without conflict, because the only admissible evidence is to the effect that, at the time defendants located the Winifred, cut No. 2 lacked five or more cubic feet of the amount required by law.

V. The recording of the certificate of location with the

district recorder was a necessary step in the process of location. The certificate itself establishes the fact that the Ella May No. 1 was situated in an organized mining district. The evidence shows that there was a recorder in the district; that he maintained an office, and that it was the custom of the district to record certificates of location in his office. The statute provides that the locator "shall record his claim with the mining district recorder and the county recorder."

*M. S. Bonnifield*, and *Cheney, Massey & Price*, for Respondents:

I. There was a discovery before appellants had initiated any rights whatever. Defendants' location was attempted to be made on the 13th of April. The testimony shows that there was rock in the face of cut No. 1 and in the bottom of the cut. It was mineral-bearing quartz rock found in the face of the cut; it was assayed and known to be mineral-bearing rock. It is the law that a valid location of a mining claim may be made where the prospector has discovered such indication of mineral, and he is willing to spend his time and money in following such indications, with the expectation of finding ore. (*Harrington* v. *Chamber*, 3 Utah, 94; *Muldrick* v. *Brown*, 37 Or. 185; *North Noonday* v. *Orient*, 6 Sawy. 299; *Burke* v. *McDonald*, 2 Idaho, 310,995,1022; *Montana Ry.* v. *Wigon*, 68 Fed. 811; *Book* v. *Justice M. Co.*, 58 Fed. 120.)

II. The value of a mineral deposit is a matter in which the government does not inquire as between two mineral claimants. All the parties to this action admit that this ground is mineral ground. In fact, both parties have proved that it was mineral ground, within the meaning of that term. (*Midgeon* v. *Montana Central Ry.*, 77 Fed. 255; *Book* v. *Justice M. Co.*, 58 Fed. 124; *Tan* v. *Story*, 21 L. D. 440; 1 Lindley on Mines, 2d ed. 609.)

III. The law does not require the vein to be cut ten feet in depth, where the work is done by a cut on the vein. Or "an open cut of at least ten feet in length along the lode from the point where the lode may be in any manner discovered, shall be equivalent to a discovery shaft." (Comp. Laws, 209.) An open cut of this character, disclosing a

mineral-bearing vein in place, is a compliance with the law.

IV. The object and purpose of the record of mines, as required by the law of this state, is for the purpose of giving notice to the world of the ground claimed. The defendants, according to their own testimony, had notice by this record. They not only had notice by the record, but it appears they had actual notice based upon an examination of the monuments erected by the respondents marking the boundaries of the Ella May by reading the two notices of location placed in the monument by the respondents; they examined the boundary monuments, and found the same marked, and they found the notice of abandonment of that portion only of the Ella May ground which overlapped the Pearlie. There was no forfeiture and no abandonment, because the defendants did all requisite things substantially required by Congress and by the laws of the state before the defendants attempted to initiate any right.

V. Notices were posted containing the required statement before the defendants initiated any right; two discovery cuts, one of which was abandoned, were made before the defendants initiated any right; the claims were monumented before the defendants initiated any right; the monuments were marked before the defendants initiated any right, and certificates substantially complying with the provision of the law were recorded before the defendants initiated any rights—and the defendants knew each and every one of these facts.

By the Court, NORCROSS, J.:

This is an appeal from the judgment and from an order denying defendants' motion for a new trial.

The action was brought for the recovery of the possession of a certain mining claim in Bullfrog Mining District, Nye County, called the "Ella May No. 1," and for damages for the withholding thereof. The complaint alleges that the plaintiffs were on the 13th day of April, 1905, the owners of, in the possession of, and entitled to the possession, and are now such owners and entitled to the possession, of the said claim, particularly describing it; that, the plaintiffs being so possessed, the defendants on the 13th day of April, 1905,

without right, entered into the possession of the demanded premises and ousted the plaintiffs, and now unlawfully withhold the possession thereof from the plaintiffs, to their damage in the sum of $25,000.

The answer denied the allegations of the complaint and alleged: "That defendants on the 13th day of April, 1905, were, ever since have been, and now are, the owners, subject to the paramount title of the United States, in possession and entitled to the possession, of the real estate or mining ground mentioned and described in the complaint, by location thereof on the 13th day of April, 1905, as a lode mining claim under and by virtue of, and in full compliance with and in conformity to, the laws of the United States and of the State of Nevada, relative to mineral locations made on, and the acquisition of, the public domain of the United States; that whatever right, if any was ever acquired by plaintiffs in and to the real estate or mining ground mentioned and described in the complaint, was by the location thereof as a lode mining claim on the 10th day of September, 1904, naming and designating the same the 'Ella May Lode Mining Claim,' but no discovery shaft, cut, crosscut, tunnel, or open cut was in manner and form as provided by law, or at all, sunk, run, or opened upon said mining claim and location, and said claim and location were abandoned by plaintiffs, and said real estate or mining ground by them on the 13th day of December, 1904, relocated as the Ella May No. 1 lode mining claim, but the boundaries thereof were not in any manner, or at all, marked, defined, or designated, and the location of said ground so standing when the defendants located the same as aforesaid." With the issues thus made by the pleadings, the parties went to trial.

The proofs showed that on the 10th day of September, 1904, the plaintiffs posted a location notice upon the ground in question designating the claim as the "Ella May." Subsequently, and within the time allowed by law, they monumented and marked the boundaries of the claim, and performed their location work as they then supposed within the limits of their said claim, after which, on or about the 7th day of December, 1904, they filed a certificate of their

location with the district mining recorder and with the county recorder. On or about the 13th day of December, 1904, the plaintiffs had their claim surveyed, and then discovered that a portion thereof overlapped a prior existing claim, and that this overlapping area included their location cut. They then moved their two south-end monuments so as to exclude the conflicting area, and posted a notice on their location cut to the effect that they abandoned such location work. Upon the advice of the surveyor, the plaintiffs, without removing the first notice of location, posted an additional location notice in the location monument reading as follows:

"Notice of Relocation. Notice is hereby given that the undersigned hereby locate and claim the following-described piece of mineral bearing ground as a lode claim: From this discovery monument 410 feet in S. 3° 10' west direction and 750 feet in a N. 23° E. and 300 feet on each side of the middle of the vein. The south end-line is identical with the north end-line of the Pearlie lode claim and the Little Jim lode claim laps this claim on the west side. The general course of the vein or ledge is S. 3° 10' W. and N. 23° E., and the size of the claim is 1160 feet long by 600 feet wide, this claim shall be known as the Ella May No. 1. Situate in Bullfrog Mining District, Nye County, Nevada. Relocated this 13th day of December, 1904. This claim is marked at each corner and on each side-line center by a mound of rock and a rock chiseled with description of corner and is relocated to better describe the locus of said claim. Locators: J. G. Ford, J. H. Ford, J. T. Wheeler, C. R. Ford. Location work consists of cut about 250 feet N. E. of this monument, work equal to 240 cu. feet. Same recorded." Plaintiffs then excavated a new discovery cut within the boundaries of their claim as modified. On March 31, 1905, plaintiffs filed with the county recorder, but not with the district recorder, another or additional location certificate.

On the 13th day of April, 1905, the defendants, appellants herein, entered upon the ground in question, and posted a location notice thereon reading as follows: "Notice of Location. The undersigned hereby give notice that we have located a claim on a lode or vein. (1) The name of said loca-

tion or claim is the Winifred. (2) The name of the locators is as follows, to wit: William Campbell, three-fourths, Add Rickard, one-fourth. (3) The claim was located on April 13, 1905. (4) Number of lineal feet claimed in length along course of the vein each way from the point of discovery, with the width on each side of the center of the vein, and the general course of the vein or lode as near as may be is as follows, to wit: Situated in the Bullfrog Mining District, County of Nye, State of Nevada, commencing at the discovery monument and running 1,100 feet north and 400 feet south from the monument, together with 300 feet on each side of the center of the vein. This ground was formerly held by J. H. Ford, Wheeler, and others, and known as Ella May No. 1, but they, not having complied with the law, have forfeited their rights to said claim. This claim is 1,500 feet long and 600 feet wide, and is about 1,200 or 1,400 feet west of the Denver lode. Witness our hands this 13th day of April, 1905. [Signed] William Campbell, ¾ths, Add Rickard, ¼th. Witness: E. M. Swan."

They subsequently monumented and marked the boundaries of their said claim, sunk a discovery shaft, and filed a certificate of location with the district and county recorder, within the time required by law for such acts to be performed. It appears both from defendants' answer and their notice of location that defendants recognized that the plaintiffs had initiated a valid location of the claim in controversy, but contend that whatever rights plaintiffs had to the mining ground had been forfeited for noncompliance with the law before the defendants made their entry and location.

To support the position of appellants, the principal contention made is that the plaintiffs and respondents never made a valid record of their claim, and that such record is an essential part of a valid location. Section 3 of "An act relating to the location, relocation, manner of recording lode and placer claims, mill sites, tunnel rights, amount of work necessary to hold possession of mining claims and the right of coöwners therein" (Comp. Laws, p. 43, sec. 210): "Within ninety days of the date of posting the location notice upon the claim the locator shall record his claim with the mining

district recorder and the county recorder of the mining district or county in which such claim is situated by a location certificate which must contain: 1st, the name of the lode or vein; 2d, the name of the locator or locators; 3d, the date of the location and such description of the location of said claim, with reference to some natural object or permanent monument, as will identify the claim; 4th, the number of linear feet claimed in length along the course of the vein each way from the point of discovery, with a width on each side of the center of the vein, and the general course of the lode or vein as near as may be; 5th, the dimensions and location of the discovery shaft, or its equivalent, sunk upon the claim; 6th, the location and description of each corner, with the markings thereon. Any record of the location of a lode mining claim which shall not contain all the requirements named in this section shall be void. * * * And any such record, or a copy thereof, duly verified by a mining recorder or duly certified by a county recorder shall be *prima facie* evidence of the facts therein stated."

The contention of counsel for appellants is well taken, that where there is a district recorder, whose place of business is publicly known, to make a valid record, it is essential to record the certificate of location of a mining claim within such district with the district recorder, as well as with the county recorder. Section 25 of the act heretofore mentioned reads as follows: "Where there is no mining district, or where a district having once existed the residence of the officers within the district and their places of business within the district where the books are kept are not publicly known, district recording shall not be required of the locator or claim owner. But recording shall be required in the office of the county recorder in all cases; as well where there is a district recorder as where there is none." (Comp. Laws, 232.) This section, construed in connection with section 3, heretofore quoted, shows, we think, clearly that it was the legislative intention to require recording of certificates of location with the county recorder in all cases, and, in addition, with the district recorder in cases where the office of such recorder within the district where

the books are kept is publicly known. In order for a
locator to avail himself of the benefits given to him by
statute by recording a certificate of location, such recorda-
tion must be with both the district and county recorder,
where the office of the district recorder is publicly known,
and, where there is no such district recorder, recording with
the county recorder alone is sufficient. In the case at bar
it is shown that there was a district mining recorder within
the district where plaintiffs' claim was situated, and that the
second certificate of location filed by respondents was not
recorded with the district recorder.

It is further contended that neither of said certificates are
sufficient in form, for the reason neither contains a descrip-
tion of the location of the claim with reference to some
natural object or permanent monument as will identify the
claim as is required by subdivision 3 of section 3, *supra.*
The description given in both certificates is substantially the
same, and is as follows: "Said claim is situated about two
miles from the Town of Amargosa." No direction is given,
and the claim might be anywhere within an area of from six
to eight square miles, and still answer to the description
given. We think it needs no argument to convince the mind
that such a description is not a substantial compliance with
the requirements of the statute, even though the courts are
very liberal in such matters, and ordinarily it is a question
of fact for the jury to determine. (*Brady* v. *Husby*, 21 Nev.
453, 33 Pac. 801.) So far as the certificates of location in
question in this case are concerned, plaintiffs are in no better
position than if no certificate or certificates had been made
or filed.

This leads to an inquiry into the proposition most strenu-
ously contended for by appellants' counsel—that under the
mining laws of this state recordation in the manner pre-
scribed by law is necessary to perfect a valid location; in
other words, that it is an essential part of the location itself.
In this contention we cannot agree. The recording of a
mining claim by the laws of Congress is not made an essen-
tial requisite to a valid location. (*Haws* v. *Victoria Copper
Co.*, 160 U. S. 303, 16 Sup. Ct. 282, 40 L. Ed. 436; *Brady* v.

*Husby,* 21 Nev. 453, 33 Pac. 801; *Poujade* v. *Ryan,* 21 Nev. 449, 33 Pac. 659; *Southern Cross M. Co.* v. *Europa M. Co.,* 15 Nev. 383; *Gleeson* v. *Mining Co.,* 13 Nev. 442; 1 Lindley on Mines, 2d ed. 273.) If it is a necessary step to perfect a valid location, and a failure to make a valid record works a forfeiture of prior existing rights, such legislation must be found clearly expressed in our state statute.

Section 24 of the mining act of this state reads as follows: "Certificates of location and of labor and improvements necessary to hold claims need not be sworn to, and are not required to be in any specified form, nor to state facts in any specific order; but must truly state the required facts." (Comp. Laws, 231.) Counsel for appellants urges that the words in this section "necessary to hold claims" refer to the words "certificates of location." We think the legislature intended them to refer alone to the words "labor and improvements." The labor and improvements mentioned in this section refer, we think, to the provisions of the federal statute requiring the expenditure of $100 a year annually in labor or improvements in order to hold a mining claim prior to the issuance of patent. Sections 24 and 25 were not originally a part of the general mining act passed by the legislature of 1897, but were added to the act by an act amendatory of and supplemental to the original act passed by the legislature of 1899. Section 10 of the original act (Comp. Laws, 217) required certificates of labor or improvements "required by law to be annually performed or made upon any mining claim" to be in the form of an affidavit. This requirement, among other things, is obviated by the provisions of the added section 24. The construction we have placed on this section is further borne out by the language of section 9 of the act, which, in part, reads: "The amount of work done or improvements made during each year to hold possession of a mining claim shall be that prescribed by the laws of the United States, to wit: One hundred dollars annually. * * *" (Comp. Laws, 216.) By referring to the title of the mining act, heretofore quoted, it will be observed that one branch of the legislation covered by the statute is the location, another is the relocation, and another is the manner of recording

lode and placer claims, mill sites, etc.   If the contention of
counsel for appellants is correct, the words "manner of record-
ing" are mere surplusage and are fully covered by the words
location and relocation.

Counsel for appellants contends that the words "shall record
his claim" used in section 3 above quoted shows that the
legislature intended recording to be an essential step in per-
fecting a valid location.   Similar language is used in section
14 (Comp. Laws, 221) of the same act relative to the certifi-
cate of location of a placer claim; in section 17 (Comp. Laws,
224) relative to the location of a mill site, and in section 21
(Comp. Laws, 228) relative to the location of a tunnel right.
In all these various sections is the provision that, if the cer-
tificate as recorded does not contain all the requirements
named, such record shall be void.   If the legislature had
intended that the location shall be void if the record was
not made as required by the particular section of the statute,
it would have been very easy for it to have said so.   Upon
the contrary, it has said, not once, but repeatedly, that such
record shall be void.   The statute provides that these records
when properly made are *prima facie* evidence of the recitals
therein contained.   Where such records are not made and
filed in the manner required by law, they are declared to be
void, and hence they cannot be used to establish *prima facie*
the facts which they recite.   If a certificate of a mining loca-
tion was filed which conformed in every particular to the
requirements of the statute, with the exception that it failed
to set forth the location of the discovery shaft, the certificate
would, under appellants' counsel's contention, not only be
void as a record, but the whole location would be void, unless
the record was corrected before an intervening location was
made.   If this contention were correct, then, the legislature
has, in effect, prescribed that a mere oversight in omitting
something required in the record is sufficient to work a for-
feiture of valuable mining rights.   Such intention we think
ought not to be imputed to the legislature, except upon the
very clearest language, not susceptible to any other reason-
able construction.

Commenting on the same provision of our statute, Judge

Hawley, in the case of *Zerres* v. *Vanina* (C. C.), 134 Fed.
618, said: "The statute under consideration, while designed
to give constructive notice to prospectors of ground claimed
by the locators, was also intended for the benefit of the
miners making location upon the public domain. It gives
to the locator ninety days to record his certificate of loca-
tion after posting his notice of location, tells him what it
shall contain, and declares that, if it does not contain what
is required, the 'record' shall be void. It does not say that,
if the record is not made, his rights to the claim shall be
forfeited. It is important for him to make the record, to
record his certificate of location within the time required,
and see to it that it contains all of the six requirements
stated in section 210. Why? Because, as therein stated,
'any such record or a copy thereof * * * shall be *prima
facie* evidence of the facts therein stated.' But, if he fails
to record his claim, it was not intended that he should be
deprived of all his rights to the mining ground; provided
he had substantially complied with all the other require-
ments of the mining laws. The record of the location is
the inception of what may be called the paper title. It does
not of itself constitute title, nor the possessory right to the
mining ground to which it relates. * * * Suppose the cer-
tificate of location had been filed within the time specified,
and that it literally complied with all the requirements pro-
vided in the statute, but in reality that the statements therein
made were 'false.' Such a record would not make the pos-
sessory title good. The subsequent locator, notwithstanding
the fact that a perfect record had been made, would not be
estopped from showing that it was false. If no record at all
is made until after a subsequent locator claims a right to the
ground, should not the original locator be allowed to prove,
if he can, that he had in all other respects fully complied with
all the requirements of the law? If he fails to properly record
his certificate of location, he may be deprived of the benefits
given by law, which would enable him more easily to prove
and make out a *prima facie* case. But it was not the inten-
tion of the lawmakers to deprive him of otherwise proving
that he had performed the essential acts necessary to give

him the right of possession to the ground." (*Last Chance M. Co.* v. *Bunker Hill S. M. Co.*, 131 Fed. 579, 66 C. C. A. 299.)

It appears from the transcript that the plaintiffs rely upon proof independent of any recorded certificate to establish a valid location of the Ella May No. 1 claim. It is contended by appellants that the proofs show that the plaintiffs abandoned their first location of the Ella May claim, and relocated it as an abandoned mining claim, and that they failed to comply with the requirements of law in reference to the location of abandoned mining claims. The trial court found that it was not the intention of the plaintiffs to abandon their rights, whatever they were, under their prior location; and we think the evidence and circumstances of the case justify this finding. When plaintiffs discovered by the survey that their location work was upon a prior existing claim, they posted a notice that they abandoned such work. This of itself evidenced an intention not to abandon any rights they might still have in their location beyond the area in conflict. They did not remove their first notice from the location monument, and the so-called "notice of relocation" in terms stated the purpose for which it was posted, to wit: "This claim  *  *  *  is relocated to better describe the locus of said lode claim." It may be that the plaintiffs did not adopt the best course in the premises, or use the most explicit language, but is quite certain that they were acting in good faith, and that no intervening rights were prejudiced. (*Lockhart* v *Johnson*, 181 U. S. 516, 526, 21 Sup. Ct. 665, 45 L. Ed. 979; Lindley on Mines, 2d ed. 330.)

Appellants contend that there is no sufficient showing of a discovery upon the Ella May claim; that the location work is insufficient in amount and does not disclose a lode or vein of mineral in place; and, further, that the markings of the boundaries are insufficient. As to the question of discovery, even if that question were not taken out of the case by the pleadings as we think it is (1 Lindley on Mines, 2d ed. 404), the most that can be said is that there is a substantial conflict in the evidence upon this question, and, where such is the case, this court has repeatedly held that it will not disturb the finding of the trial court. The same may also, we

think, be said with regard to the location cut. The contention with regard to the sufficiency of the monuments and markings thereon is based entirely upon the assumption that the Ella May No. 1 claim was located as an abandoned mining claim, and that the prescribed method of monumenting and marking such abandoned claim was not complied with. This question has already been disposed of.

Other alleged errors are assigned in the transcript, but the views we have already expressed regarding this case make it unnecessary to refer to them.

For the reason given, the judgment and order of the trial court are affirmed.