(No. 6881. July 10, 1941)

S. E. GERBER and DORA J. P. GERBER, Appellants, v. MINNIE WHEELER and HARRY HILLS, Respondents.

(115 Pac. (2d) 100)

674

Wilbur L. Campbell, for Appellants.

Paul G. Eimers, for Respondents.

AILSHIE, J.—This is an action to quiet title to certain mining claims situated in the Marshall Lake Mining District in Idaho County.

The appellants (husband and wife) alleged that they located two certain mining claims, Tualatin and Potlatch, on public unappropriated mineral lands of the United

States, and complied with the laws in relation thereto; and that the defendants (respondents) were asserting some claim or right adverse to them, and prayed for a decree quieting appellants' title to their claims. Defendants answered, denying the allegations of the complaint and alleging title in themselves of the ground covered by the appellants' claim, subject only to the paramount title of the United States, and prayed a decree quieting respondents' title to their prior claims, Humbug No. 1 and Humbug No. 3.

The evidence on the part of appellants established the location of the Tualatin October 26, 1936, and the Potlatch located July 10, 1937. The evidence on the part of respondents showed that they were the successors in interest of one Clifford Stock, now deceased, who located the Humbug No. 1 July 1, 1928, and the Humbug No. 3 May 2, 1930. At about the same time he also located the Humbug No. 2, Humbug No. 4 and Humbug No. 5, making a group of five adjoining claims. At the trial of the case the court found in favor of the appellants, as to the Tualatin claim and entered a decree quieting their title thereto. No appeal has been taken from that part of the decree. The court, at the same time, made findings and entered decree in favor of respondents, holding the Potlatch location invalid as being in conflict with and subsequent to respondents' claim, Humbug No. 1. The appellants appealed from the judgment holding the Potlatch claim void as against respondents.

The assignments of error raise the sufficiency of the evidence to support certain parts of the findings, and especially the finding, that the HUMBUG No. 1 was a valid, subsisting location at the time appellants attempted to locate the POTLATCH.

The view we take of the evidence as contained in the record will render it unnecessary to consider all the various paragraphs of the findings of which complaint is made. The particular findings, which are decisive of this case, are as follows:

"The Court finds that the location of the Potlatch Quartz Lode Mining Claim was made by the plaintiffs,

Sam Gerber and Dora J. P. Gerber, with the knowledge that said description therein contained in the location notice of the Potlatch Quartz Lode Mining Claim, and marked and described upon the ground embraced within the location of the said Potlatch Quartz Mining Claim and the whole and every part and parcel thereof, covered and included certain lands and premises claimed and occupied by the defendants, Minnie Wheeler and Harry Hills; and the Court finds that the plaintiff S. E. Gerber had previously to the date of his location of said claim, recognized the claim of the said defendants, Minnie Wheeler and Harry Hills, and their predecessor in and to certain lands and premises included in the location and description of the said Potlatch Quartz Lode Mining Claim, and the Court finds that the plaintiffs, S. E. Gerber and Dora J. P. Gerber are estopped from asserting any claim, right, title or interest in and to the Potlatch Quartz Lode Mining Claim or in and to any part of and parcel thereof embraced within the limits of the description of the said Potlatch Quartz Lode Mining Claim and the description contained in the notice of location thereof and that the Court finds that the Potlatch Quartz Lode Mining Claim is not a valid claim.

"That defendants and cross-complainants purchased from the estate of Clif Stock, deceased, the mining claims hereinafter described, and that Clif Stock has located and had been the owner of and in possession of the property hereinafter described up until the time of his death on January 18, 1934; and that after his death Dewey D. Standish took possession and control thereof, as administrator of the estate of Clif Stock, and sold the same to Minnie Wheeler, and that she and the defendant and cross-plaintiff, Harry Hills, have been the owner— and in possession of said property, situate and being in Marshall Lake Mining District, Idaho County, Idaho, described as follows:

"that certain quartz mining claim, known as the Humbug No. 1 Quartz Mining Claim, located July 1, 1928, the location notice of which is recorded in the office of the Recorder of Idaho County, Idaho, in Book 61 at Page 210

of Mining Claims, of the records of said County, which said location was made by C. Stock, since deceased, and embraces the ground described in said notice, as follows:

"Said location is marked and described on the ground as follows, to-wit: About 700 ft. West of Bear Lake on the East side of Bear Creek and joining the Jewel Group of Mining Claims on the East. This claim is marked on the boundary lines with six posts, one at each corner and one at each end center."

"From this point of discovery and along this ledge the undersigned claims 800 feet in a Westerly direction and 700 feet in a Easterly direction, and on the N. side of the middle of said ledge 300 feet and on the S. side thereof 300 feet.

"The distance and direction from this discovery monument to Mineral Monument N_1 is about one mile in a South Westerly direction."

It appears that the mineral land, over which these several locations have been made, has been the subject of locations and relocations for more than forty years; and it was admitted, on the trial, that the land in controversy is "mineral ground." It is clear that a great deal of work had been done on the ground, from time to time, during the course of the years.

Stock, the locator of the Humbug group, died January 18, 1934. His estate was administered and an appraisement was filed July 11th of the same year, in which the value of the Humbug group was fixed at $500. No sale was made under this appraisement, and on July 10, 1937, a re-appraisement was made, placing a value on the locations of $125. Appellant S. E. Gerber (who will hereafter be referred to simply as Gerber) *was appraiser each time.*

Following the death of Stock and on March 16, 1934, Gerber made an affidavit in which he stated:
"that he owns quartz mining claims adjoining the claims named Humbug No. 1, Humbug No. 2, Humbug No. 3, Humbug No. 4 and Humbug No. 5, standing of record in the name of Clif Stock, all of said claims and the claims of

affiant being in Marshall Lake Mining District, Idaho County, Idaho.

"That he knows of his own knowledge that more than Five Hundred and No/100 Dollars ($500.00) worth of work and/or improvements were performed and made upon said mining claims Humbug No. 1, Humbug No. 2, Humbug No. 3, Humbug No. 4 and Humbug No. 5, subsequent to July 1st, 1933, and prior to the death of said Clif Stock as hereinafter set out, and that such expenditure was made by, for or at the expense of the said Clif Stock, owner of said claims, for the purpose of holding said claims; that said five claims for several years last past have been worked as a group and that the greater part of said sum of $500.00 was expended on said claims Humbug No. 1 and Humbug No. 2, but was made for the benefit of and did benefit all of said five claims equally.

"That all stakes, monuments and trees marking boundaries of said claims are in proper place and positions.

"That affiant makes this affidavit of assessment work for and on behalf of said Clif Stock, owner, for the reason that said Clif Stock, owner of said claims, died at Lewiston, Idaho, on or about January 5, 1934 and had not made affidavit of his assessment work prior to his death."

On the following day (March 17, 1934) he wrote Mr. A. S. Hardy, attorney for the Stock estate, as follows:

"I am enclosing an affidavit of assessment work for the group of Mining claims held by the Clif Stock estate.

"Possibly I am the only person that really knows that the work was done.

"Am sending this as I thought you might need it to protect the estate."

From the foregoing and many other facts and circumstances disclosed by the record, it is quite conclusively established that Gerber was well acquainted with the Humbug group of claims, and particularly Humbug No. 1. He had both actual and constructive notice of the existence of the location and the claim of Stock and his successors (these respondents) in and to this property. Ger-

ber examined the record of the location notice of the Humbug No. 1 before making the Potlatch location.

September 2, 1936, Gerber wrote the administrator concerning several matters and, among other things, said:

"Are you still the Administrator for the Stock estate? As you know, the claims, valued as and for a mining property are worth nothing.

"Wouldn't mind having the one claim joining the Jewel group just for protection and could make use of the cabin in rebuilding at the Jewel. We might be able to get together on a price."
Notwithstanding these acknowledgments and inquiries, Gerber attempted the location of the Potlatch claim, covering the Humbug No. 1 ground, July 10, of the following year.

 It is now claimed by appellants that the trial court erred in holding that they are estopped from asserting any right, claim or interest to the mineral lands covered by the Potlatch location. Technically speaking, estoppel is perhaps not the correct term to apply in such case, although it has been said that estoppel "is used sometimes merely to indicate the existence of an ordinary prior paramount right in the opposite party." (19 Am. Juris., p. 600, par. 2; *Chicago, St. P., M. & O. Ry Co. v. Douglas County*, (Wis.) 114 N. W. 511, 514.) That is evidently the sense in which the court used the term in the findings of this case. Here the conduct of appellants can not be said to have mislead or deceived either Stock, in his lifetime, or respondents as the grantees of his estate. On the other hand, the conduct here disclosed clearly evidences knowledge, on the part of appellants, that the mineral land in question was no longer a part of the public domain but was rather held under a prior location made by Stock. It also discloses that they knew the substantial location and boundaries of the Humbug No. 1 claim, with sufficient certainty to render it unnecessary for respondents to prove and identify their stakes, discovery and boundary lines. It will be noted that, in his affidavit (supra), Gerber said: "That all stakes, monuments and trees marking boundaries of said claims

are in proper place and positions." He furthermore said: "that said five claims for several years last past have been worked as a group."

We recently passed upon a somewhat similar question in the case of *Independence Placer M. Co. v. Hellman,* 62 Idaho 180, 109 P. (2d) 1038, 1042, and said:

"One who has actual notice, that a prior locator is claiming a tract of mining ground and has done location work thereon and continued to do prospecting and assessment work on the property, is not in a position to make a valid location on such property. In such case he has notice that the ground is claimed by another and that so much of it as is claimed and occupied is no longer public domain subject to location; and he may not question the sufficiency of the original location or the character of the original occupant's title." (Citing cases.)

(See sec. 38 of 30 U. S. C. A.; *Humphreys v. Idaho G. M. Dev. Co.,* 21 Idaho 126; 40 L. R. A., N. S., 817; *Allen v. Laudahn,* 59 Idaho 207.)

The location notice, stakes and boundary markings were evidently sufficient to adequately advise appellants of the location and identity of the claim, so that, *as to them,* there was no danger of respondents swinging the claim to take in ground not originally covered by the location, as denounced by appellants' authorities: *Bismark Mountain Gold M. Co. v. North Sunbeam Gold Co.,* 14 Idaho 516; *Flynn Group M. Co. v. Murphy,* 18 Idaho 266; 138 Am. St. 201; *Nicholls & Gribble v. Lewis & Clark M. Co.,* 18 Idaho 224; *Stemwinder M. Co. v. Emma & Last Chance C. M. Co.,* 2 Idaho 456; affirmed, 149 U. S. 787, 13 S. Ct. 1052, 37 L. ed. 941.

Appellants contend, and correctly so, that respondents must recover on the strength of their own title and not upon the weakness of the adversary claim. (*Independence P. M. Co. v. Hellman, supra,* and cases cited.) Here each of the parties assumed the affirmative of proof in support of their respective locations. Plaintiffs failed to establish their claim to the Potlatch location, because of the prior location by defendants' predecessor of the

Humbug No. 1, and the continued possession of their prior location.

This action is not an adverse suit, under the U. S. statute, for the purpose of acquiring a government patent, as authorized by sec. 30 of 30 U. S. C. A. This is in fact only a contest between two locators, as to which is entitled to possession and occupancy of the public mineral lands covered by these respective locations. It appears, and has been so found, that the Humbug No. 1 and the Potlatch locations cover the same ground. The court having found and held that the ground was already covered and appropriated by the Humbug No. 1 location, it necessarily follows that the Potlatch location was, and is, invalid and void. The evidence supports the findings and conclusions reached by the trial court.

We find no error in the ruling of the court in admitting in evidence the Hill sketch.

The judgment is affirmed, with costs in favor of respondents.

Budge, C.J., and Givens, Morgan and Holden, JJ., concur.