# H. L. CLAYBAUGH, Appellant, v. FRANK GANCARZ, Respondent.

No. 4569

February 5, 1965          398 P.2d 695

*Denton, Monsey & Winne*, of Las Vegas, for Appellant.

*Deaner, Butler & Adamson*, of Las Vegas, for Respondent.

## O P I N I O N

By the Court, BADT, J. :

This is an appeal from a judgment in an action involving conflicting claims to an unpatented lode mining claim in Bull Frog Mining District, Nye County, Nevada. The senior locator was H. L. Claybaugh, appellant herein, under his asserted location of the Nine-oh lode mining claim. The junior locator was Frank Gancarz, under his asserted location of the Gancarz lode mining claim, which was subsequently located over the Nine-oh, under the assumption and theory that the Nine-oh location was void by reason of Claybaugh's failure to comply with the requirements of the Nevada statute in his asserted execution and recording of his location certificate, and his performance of the required location work, marking of boundaries, etc.

The issues were tried under Claybaugh's suit to quiet title against Gancarz and on the answer and cross-complaint of Gancarz seeking to quiet title as against Claybaugh. At the completion of appellant's case, the court granted respondent's motion to dismiss for failure to prove a claim. Respondent introduced evidence in support of his counterclaim and the lower court made findings and entered judgment holding that respondent

Gancarz was entitled to exclusive possession and his title was quieted against all claims of Claybaugh. We proceed to the facts.

Claybaugh, being advised of the existence of a "soap mine" in Nevada, visited the property in 1941 and in 1942, in each instance taking samples of the bentonite ore. In August, 1946, accompanied by a mining engineer, he went upon the property and established corner monuments, side monuments, and monuments at the point of discovery. On the same day he filed a notice of location in the county recorder's office at Tonopah. He hired one John L. Lamb to do the location work. It seems that the notice of location was posted on a location monument August 15, 1946, and was recorded with the county recorder the same day. The location certificate, made upon a printed form captioned "Proof of Labor," was subscribed and sworn to October 31, 1946, and filed for record in the county recorder's office November 6, 1946. Both of these instruments were admitted in evidence over objection and subject to a motion to strike upon the ground that they were insufficient, together or separately, to constitute a certificate of location as required by the pertinent statute NRS 517.050. A subsequent motion to strike was granted upon the grounds mentioned.

Claybaugh's location notice was as follows:

"LOCATION NOTICE   Notice is hereby given that the undersigned has discovered and hereby locates and claims the following described piece of mineral bearing ground as a Lode Mining claim. From the discovery monument 200 feet in a Westerly direction and 1300 feet in a Easterly direction and 300 feet on each side of the middle of the vein.

"This claim is located approximately ½ mile Easterly from Beatty, Nev., on Range of Hill carrying telephone line.

"The general course of the vein or ledge is Easterly and Westerly and the size of the claim is 1500 feet long by 600 feet wide. This claim shall be known as the Nine-oh situate in the Bullfrog Mining District, Nye County, State of Nevada.

"Located this 15th day of Aug., 19[46].
H. L. Claybaugh
L. A. Harris
Alvah R. Buswell"[1]

His certificate of location (entitled on a printed form used as "Proof of Labor") is as follows:

"STATE OF NEVADA }
COUNTY OF NYE }

"Before me, the subscriber personally appeared, *John Lamb* who being duly sworn, says: that at least *One hundred* dollars worth of labor or improvements *as location work* were performed and made upon *Claim known as Nine O.H. ½ Mile from Beatty Nevada, Easterly direction* situated in *Bull Frog* Mining District, County of *Nye*, State of *Nevada*, during the year ending *July 1st*, 1947.

"Such expenditure was made by or at the expense of *H. L. Claybaugh, of Las Vegas, Nevada*, owner of said claim, for the purpose of holding said claim.

Subscribed and sworn to before me this)
*31* day of *October*                    *1946*)
*Dorothy M. Andre*
NOTARY PUBLIC in and for
Nye County, Nevada"

The foregoing was filed for record in the county recorder's office in Nye County, Nevada, on November 6, 1946.

The pertinent statutes involved at the time were NCL, 1931–1941 Supp., 4120–4122, reading as follows:

"§ 4120. WHO MAY LOCATE—METHOD—FORM AND POSTING OF NOTICE. § 1. Any person who is a citizen of the United States, or who has declared his intention to become such, who discovers a vein or lode, may locate lode mining claim thereon by defining the

---

[1]The recital of the year is indecipherable, but it was stipulated that the year was 1946. Although the two co-locators with Claybaugh, as well as other parties who are joined with Gancarz, appear in the record of the trial, the only parties to this appeal are appellant Claybaugh and respondent Gancarz.

boundaries of the claim in the manner and within the time hereinafter prescribed, and by erecting or constructing at the point of such discovery a monument of the size and character of any of the several monuments prescribed in section 2 of this act and by posting in or upon such discovery monument a notice of such location, which must contain:

"First—The name of the claim.

"Second—The name of the locator or locators, together with the post-office address of such locator or locators.

"Third—The date of location.

"Fourth—The number of linear feet claimed in the length along the course of the vein, each way from the point of discovery, with the width claimed on each side of the center of the vein and the general course of the lode or vein, as near as may be.

"§ 4121. LOCATION WORK.—BOUNDARIES, HOW AND WHEN DEFINED. § 2. The locator of the lode mining claim must sink a discovery shaft upon the claim located four feet by six feet to the depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper, if necessary to show by such work a lode deposit of mineral in place; a cut or crosscut or tunnel which cuts a lode at a depth of ten feet or an open cut along the said ledge or lode, equivalent in size to a shaft four feet by six feet by ten feet deep, is equivalent to a discovery shaft. The locator must define the boundaries of his claim by removing the top of a tree (having a diameter of not less than four inches) not less than three feet above the ground, and blazing and marking the same, or by a rock in place, capping such rock with smaller stones, such rock and stones to have a height of not less than three feet, or by setting a post or stone one at each corner and one at the center of each side line. When a post is used, it must be at least four inches in diameter by four and one-half feet in length set one foot in the ground. When it is practically impossible, on account of bedrock or precipitous ground, to sink such posts, they may be placed in a mound of earth or stones, or where the proper placing of

such posts or other monuments is impracticable or dangerous to life or limb, it shall be lawful to place such posts or monuments at the nearest point properly marked to designate its right place. When a stone is used (not a rock in place) it must be not less than six inches in diameter and eighteen inches in length set two-thirds of its length in the top of a mound of earth or stone, four feet in diameter and two and one-half feet in height. All trees, posts or rocks used as monuments, when not four feet in diameter at the base, shall be surrounded by a mound of earth or stone four feet in diameter by two feet in height, which trees, posts, stones or rock monuments must be so marked as to designate the corners of the claim located; provided, however, that the locator of a mining claim shall within twenty days from the date of posting the notice of location define the boundaries of said claim by placing at each corner and at the center of each side line one of the hereinbefore described monuments, and shall within ninety days of the date of posting said location notice perform the location work hereinbefore prescribed.

"§ 4122.  LOCATION NOTICE, FILING AND CONTENTS—RECORD OF LOCATION—CONTENTS OF LOCATION CERTIFICATE—FORMER RECORDS VALIDATED.  § 3.  Any locator or locators of a mining claim, after having established the boundaries of said claims, and after having complied with the provisions of this act with reference to the establishment of such boundaries, may file with the district mining recorder a notice of location, setting forth the name given to the lode or vein, the number of linear feet claimed in length along the course of the vein, the date of location, the date on which the boundaries of the claim were completed, and the name of the locator or locators. Should any claim be located in any section or territory where no district has been as yet formed, or where there is no district recorder, the locator or locators of such claims may file with the county recorder, notice of location as set forth above, and said notice of location will be prima facie evidence in all courts of justice of the first location of said lode or vein. Within ninety days of

the date of posting the location notice upon the claim of locator [he] must record his claim with the county recorder of the mining district or county in which such claim is situated by location certificate which must contain:

"First—The name of the lode or vein;

"Second—The name of the locator or locators, together with the post-office address of such locator or locators;

"Third—The date of the location and such description of the location of said claim, with reference to some natural object or permanent monument, as will identify the claim;

"Fourth—The number of linear feet claimed in length along the course of the vein each way from the point of discovery with the width on each side of the center of the vein, and the general course of the lode or vein as near as may be;

"Fifth—The dimensions and locations of the discovery shaft or its equivalent, sunk upon the claim;

"Sixth—The location and description of each corner, with the markings thereon. Any record of the location of a lode mining claim which shall not contain all the requirements named in this section shall be void, and every location of a mining claim made after the effective date hereof shall be absolutely void unless a certificate of location thereof substantially complying with the above requirements is recorded with the county recorder of the county in which the claim is located within ninety (90) days after the date of location. All records of lode or placer mining claims, millsites, or tunnel rights heretofore made by any recorder of any mining district or any county recorder are hereby declared to be valid and to have the same force and effect as records made in pursuance of the provisions of this act. And any such record, or a copy thereof duly verified by a mining recorder or duly certified by a county recorder, shall be prima facie evidence of the facts therein stated."

Pertinent amendments from the old statute may be noted as follows: The requirement that the post office address of the locators be recited; the provision that

every location of a mining claim made after July 1, 1941, shall be absolutely void unless a certificate of location thereof substantially complying with the above requirements is recorded with the county recorder of the county in which the claim is located within 90 days after the date of location. The old statute, prior to the 1941 amendment, had contained only the sentence that preceded such requirement which made *the record* of the location of a lode mining claim not containing all the requirements named in the section void. Under the former section, as thus described, it had been regularly held by this court and other courts of the mining states that it was merely the record that was void and not the location, and that the failure to conform simply deprived the locator of the prima facie proof of the facts recited in the location certificate, but did not deprive him of otherwise making proof of such facts. The 1941 amendment, then, besides requiring a recital of the post office address of the locator, provided further that not only the record of the location not containing all the requirements named in the section should be void but that every *location* shall be *absolutely void* unless the certificate *substantially* complies with the requirements. In other words, the effect of non-compliance was drastically increased to make the *location,* as well as the record, void, but to soften it by requiring only a *substantial* compliance.

Before applying a construction of the amendments we turn to further facts of the case. For 15 years following appellant's location of the Nine-oh, he performed the required annual labor on the claim as evidenced by his annual proofs of assessment work. In the year 1960 he brought respondent upon the claim in view of negotiations for having respondent and his associates enter into a contract with reference to working the same under a contract and lease. Respondent frankly concedes that on this occasion he saw some one working on the claim and knew that appellant was claiming this Nine-oh as his own. In February, 1961, respondent went to look for bentonite on his own behalf, thinking he could locate some ore near appellant's Nine-oh claim, "but did not

want to file over him." In his desire to know the full extent of appellant's claim, respondent examined appellant's notice of location at the recorder's office in Tonopah. After determining that appellant's notice of location was defective, respondent went to the claim, "I put up a location monument on Mr. Claybaugh's claim," and erected other monuments. Gancarz further testified he had a Mr. Beko make out a location notice. "And I went back to the claim and nailed a can on *the* post (emphasis supplied) and I put a copy of the location notice in the can." He offered in evidence a photograph which he identified as the location monument. Directly behind it appears to be the portal of a tunnel. On the photograph of the four by four post is an indecipherable paper. If this paper is a notice of location, it certainly is not the Gancarz notice of location which, according to his testimony, was placed in a can nailed to the post. If it is anything at all, it must be Claybaugh's notice of location. Gancarz further identified photographs 9 and 10 as pictures of the inside of the mine. They appear to indicate the portal of a tunnel with odds and ends stored therein. Gancarz testified that this condition was there at the time he made his location, and before he did any work on the mine. After completing his discovery work, he hired a person to do the location work, and then proceeded to file a certificate of location May 26, 1961. On October 2, 1961, appellant filed his complaint to quiet title and in due course respondent filed his answer and counterclaim to quiet title.

As heretofore noted, appellant's notice of location and certificate of location, theretofore admitted subject to a motion to strike, were later stricken on the ground that they did not substantially comply with the amended statute. His complaint was dismissed on respondent's motion, and respondent proceeded to prove his counterclaim. Appellant offered to prove that respondent was his tenant at the time respondent located his Gancarz claim. There was already in evidence a lease agreement executed July 1, 1960, from appellant to respondent. On April 19, 1961, there was a stipulation to dismiss appellant's receivership suit against respondent's company,

Lovelite Cosmetics, Inc. On March 6, 1961, Gancarz relocated the property in his own name, but the stipulation of April 19, 1961, indicated that up to that date the lease was in effect. Gancarz was a party to the written agreement of April 19, 1961, renouncing the contract and lease of July 1, 1960. The trial court refused to hear any of the evidence offered on the ground that appellant claiming to hold as a landlord "had nothing to lease." The point here involved was of course the general rule that a tenant cannot question his landlord's title.

1. The main question presented is whether under the facts of the case Gancarz is entitled to prevail over the Nine-oh location, or whether under such facts Claybaugh's work and filings may be said to be a substantial compliance with the statute. It may first be noted that neither in the location notice nor the location certificate did Claybaugh recite his post office address. As against Gancarz' attack, however, it is apparent that Gancarz was in no way prejudiced by this omission. He knew Claybaugh and knew his address. They had had business dealings with each other and were negotiating about the property. It would be unreasonable to hold the failure to recite his post office address as a substantial failure to comply.

Taking the notice of location and certificate of location together, both of which were offered in evidence at the same time, we find the recitals (1) that Claybaugh had made a discovery and located a lode claim; (2) that he had erected a discovery monument; (3) that the claim extended 200 feet in a westerly direction and 1,300 feet in an easterly direction and 300 feet on each side of the middle of the vein; (4) that the claim was located approximately one-half mile easterly from Beatty, Nevada, on a range of hills carrying telephone line; (5) that the general course of the vein was easterly and westerly; (6) that the size of the claim was 1,500 feet long by 600 feet wide; (7) that the name of the claim was Nine-oh; (8) in Bull Frog Mining District, Nye County, Nevada; (9) that it was located August 15, 1946; (10) that his certificate of location was recorded

with the county recorder November 6, 1946, within 90 days from the date of location; (11) that location work of at least $100 worth of labor or improvements were performed on the claim and were made at Claybaugh's expense.

Neither of the instruments described the discovery shaft nor the location and description of each corner with the markings thereon. However, Claybaugh testified: "Mr. Harris [the man who accompanied him in making the location] is a mining engineer and we put up monuments and corners and side monuments and monuments at point of discovery at the mine. Q. As I understand your testimony, you put up corners, sideline markers, corner markers, and markers at the point of discovery. A. Yes."[2] It is true that Gancarz testified that at the time he went upon the claim to make his location he did not see any monuments. This negative testimony cannot prevail over Claybaugh's positive testimony that he had erected the monuments, and there was nothing otherwise in the case to contradict this testimony. The same may be said as to the location and description of the location work.

We may note at this point that the statute prior to the 1941 amendment declaring that any record of the location of the lode which did not contain all the requirements named would be void, was interpreted in Ford v. Campbell, 29 Nev. 578, 92 P. 206, with Mr. Justice Norcross speaking for the court, relying strongly on the opinion of Judge Hawley in Zerres v. Vanina, 9 Cir., 134 F. 618, holding a senior location valid as against a junior locator who claimed that neither the location work nor the location certificate complied with the requirements of the statute. Under that statute Justice Norcross quotes with approval Judge Hawley: " 'If no record at all is made until after a subsequent locator claims a right to

---

[2]Respondent's Exhibit 3, a photograph showing what purports to be the location monument, as hereinabove discussed, clearly indicates in its immediate vicinity, possibly only a few feet distant, the portal of the tunnel comprising the location work.

the ground, should not the original locator be allowed to prove, if he can, that he had in all other respects fully complied with all the requirements of the law?' "

Respondent cites Gustin v. Nevada-Pacific Development Corp., 125 F.Supp. 811, an opinion by Foley, Chief Judge, in behalf of the United States District Court for the District of Nevada.

Judge Foley in that case held invalid certain of plaintiff's Kay Cooper group for which no certificate of location had been recorded, and likewise held invalid certain claims asserted by the defendants and counterclaimants, of the Ray Ricketts group for which location certificates had not been recorded. It is the one case presented with reference to conflicts between a senior and junior locator since the 1941 amendment, and appellant places great reliance upon it. However, it is clearly distinguishable in two respects. In the instant case a location certificate was filed within 90 days after the location. In Gustin no certificates of location or purported certificates of location were filed within the 90-day period prescribed by the statute. Secondly, no issues of the bad faith of the junior locator were raised. Had they been, it is quite possible that the decision might have gone differently, as Judge Foley referred to the amendment as "a severe and confusing, but unfortunately legal, prerequisite to the location of a lode mining claim and out of harmony with the time honored policy of the mining law that the rules and regulations looking to the valid location of mining claims, * * * should be simple and easily understood by the ordinary prospector."

We thus turn to those elements in the present litigation having to do with the good faith of the appellant and the bad faith of the respondent with regard to the conflicting claims to the property in question. In 2 Lindley on Mines § 381 (3rd ed. 1914), we find the following, supported by over a score of authorities in the note:

"In the initiation of rights upon public mineral lands, as well as in the various steps taken by the miner to perfect his location, his proceedings are to be regarded with indulgence, and the notices required invariably receive at

the hands of the courts a liberal construction. The mining laws are 'to be expounded with as little differentiation as may be between former known actual customs of miners and the formulated expressions of congress based upon those customs in present positive law.'

"The courts always construe these notices liberally, and if by any intendment the proof can be reconciled and made consistent with the statement contained in them, the jury will be allowed to say whether or not, upon the whole proof, the identification is sufficient." (Bramlett v. Flick, 23 Mont. 95, 57 P. 869, 20 Morr.Min.Rep. 103).

"To hold the locator to absolute technical strictness in all the minor details would be practically to defeat the manifest end and object of the law. The pioneer prospector, as a rule, is neither a lawyer nor a surveyor. Neither mathematical precision as to measurement nor technical accuracy of expression in the preparation of notices is either contemplated or required. The law being designed for the encouragement and benefit of the miners should be liberally interpreted, 'looking to substance, rather than shadow, and should be administered on the lines of obvious common sense.' Mere imperfections in the certificate will not render it void.

"As was said by the supreme court of Utah,—

" 'If by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient.' " (Citing numerous cases from Utah, Idaho, and Montana.)

Most of the cases cited were early cases. Fifty years after Lindley the monumental work "The American Law of Mining" was published, edited by the Rocky Mountain Mineral Foundation, University of Colorado. At Volume I, § 5.67, we find the following:

"Statutes of four jurisdictions state, in varying terms, that a failure to comply with any of the state location requirements (including the place of monuments) will render the location void. While these statutes have occasionally been applied strictly, it would seem that they are

subject to two general qualifications: * * * (2) where the act omitted or defectively performed, such as marking, was one designed to provide notice of the location, an adverse claimant with actual knowledge of the existence and extent of the defective location should not be allowed to complain. * * *

"In recent years courts have placed increasing emphasis on the good faith of the conflicting junior claimant, and have tended to excuse defects in the senior location if this is not shown."

Citing in the footnotes numerous authorities, old and new, we find the statement:

" '* * * [T]he law does not look with favor upon him who deliberately and knowingly seeks to appropriate to himself the fruits of another's labor, and * * * the policy of the law will always uphold an original discovery even though there be technical defects, if the location is made in good faith.' "

Numerous cases support the text. In MacDonald v. Midland Mining Co., 139 Cal.App.2d 304, 293 P.2d 911, an action for declaratory relief was filed by a junior as against the assigns of a senior locator. It was in effect the typical action referred to in most of the cases as an action involving conflicting claims to an unpatented mining claim. A lode had been discovered and a location notice posted June 16, 1951. Discovery work was performed between October and December, 1951. On February 5, 1953, an amended notice, meeting statutory requirements, was recorded. Up to this point no third party had questioned the ownership of the locators. "Not even Burtt, who, though employed by plaintiff [the junior locator] in February 1953 nevertheless prepared and recorded the Amended Notice of February 5, 1953, in the name of and presumably as a friendly public gesture to the Law Group [the senior locators], with whom, we infer, Burtt hoped to negotiate a sale or lease on behalf of his employers, the plaintiff and the plaintiff's associates [the junior locators]." On March 29, 1953, Neubert recorded a notice of location on Garnet Queen No. 3, calling it the Garnet King Lode Claim. All the Neubert

papers were prepared for him by Burtt. Burtt also personally posted Neubert's notice on the property. Thereafter Burtt supervised the discovery work and personally recorded the notice, all in behalf of Neubert [junior locator] just as he had done for the Law Group [senior locators] a few weeks earlier. On April 4, 1953, Neubert contracted to sell his interest in the Garnet King to plaintiff. The parties interested in the junior location had been lessees of the Garnet King No. 3 from the trustee of the senior locators. The court's final judgment, in affirming the decision holding for the senior locator, said that the record supported the finding that the junior locator's location was made in bad faith and he was not before the court with clean hands, and in view of the fact that the action was an equitable one, such findings alone were sufficient to support the denial of relief to the appellant junior locator, this, notwithstanding § 2307 of the California statute providing that "a location shall be null and void if the requirements of Section 2304 (performance of discovery work within 90 days) are not complied with * * *." The court cited cases approving a liberal construction of the statute where there is substantial compliance, and that " '[e]very reasonable doubt will be resolved in favor of the validity of a mining claim as against the assertion of a forfeiture.' " And particularly: " 'It is well settled that one who has actual knowledge of the claims of another to mineral land cannot, in good faith, relocate the land because of technical defects in the making of the location.' " And again: " 'Good faith confronts any subsequent locator who enters upon the actual possession of a senior locator's land for the purpose of initiating a claim to the same ground, although the senior location be invalid, and when such entry is in bad faith such intrusion constitutes a naked trespass.' "

In Harvey v. Havener, 135 Mont. 437, 340 P.2d 1084, the question presented was: "Does the failure to record a verified location notice operate to deprive the locator of a mining claim of his interest therein as against one who enters the property and makes a subsequent location with notice of the prior claim?" The court said, no. "The only person who can invalidate such a defective recorded

location notice is one who makes a valid location without actual notice of the prior location." The court further held: "[A]s to persons with actual notice the provisions of the statute with respect to the contents of the recorded certificate are not in any sense of the word mandatory."

In Flynn Group Mining Co. v. Murphy, 18 Idaho 266, 109 P. 851, the holding is reflected in headnotes 11 and 12 reading, respectively, as follows:

"Where it appears that a mining claim has been located in good faith, if by any reasonable construction the language used in the location notice describing the claim and referring to natural objects and permanent monuments imparts knowledge of the location of such claim to a subsequent locator, it is sufficient."

"Held, that the locator had actual notice that the ground in controversy had been located, as well as constructive notice by an examination of the recorded notice, and that no technicalities will be resorted to to sustain his relocation of the same ground."

In Brown v. Murphy, 36 Cal.App.2d 171, 97 P.2d 281, a junior locator sued to quiet title to mining claims as against a senior locator. The trial court's denial of relief was affirmed in the following language:

"Good faith confronts any subsequent locator who enters upon the actual possession of a senior locator's land for the purpose of initiating a claim to the same ground, although the senior location be invalid, and when such entry is in bad faith, such intrusion constitutes a naked trespass. [citing authorities]

"In view of this finding and conclusion it is unnecessary to determine the many other points presented. Inasmuch as appellant must rely on the strength of his own title, under the circumstances here related it was incumbent upon him to prove that he located in good faith, especially when the property was in the actual possession of another."

Johnson v. Ryan, 43 N.M. 127, 86 P.2d 1040, was an action by senior locators to quiet title to a mining claim. The trial court found in substance that senior locators had performed all necessary acts in locating this mining

claim, with the exception of recording a copy of the location notice, and rendered judgment in favor of junior locators. The Supreme Court of New Mexico reversed, because the junior locator had filed with notice and knowledge of the senior locator's claim of title. It cited Bismarck Mining Co. v. North Sunbeam Co., 14 Idaho 516, 95 P. 14, as follows: "It is the well settled doctrine of all the later decisions that location notices and records should receive a liberal construction, to the end of upholding a location made in good faith."

In Gerber v. Wheeler, 62 Idaho 673, 115 P.2d 100, where, as here, a junior locator filed on the same ground covered by the senior locators' claim, the court found that as the ground was already appropriated by a prior claim and the junior locators had actual knowledge of this, the second location was void.

Montana and other states have brought the matter of good faith into the picture by statute. Its statute provides: "No defect in the posted notice or recorded certificate shall be deemed material, except as against one who has located the same ground, or some portion thereof, in good faith and without notice."

However, with or without such statute, jurisdiction after jurisdiction has considered this question and has decided mining conflicts on the basis of the presence or absence of good faith. The purpose of the certificate is to impart constructive notice to subsequent locators of the existence of the claim, its location and extent, just as the markings upon the ground are intended to impart actual notice of the same facts. As to the parties having actual notice, as respondent did in this instance, the defects in the certificate, whatever they may be, are to be deemed immaterial. Heilman v. Loughrin, 57 Mont. 380, 188 P. 370, citing the Montana statute and 2 Lindley on Mines § 379 (3rd ed. 1914).

In view of the increasing emphasis placed by the courts in recent years on the question of the good faith of the conflicting junior claimant and to excuse defects in the senior location if this is not shown, we hold that

the existence of good faith in behalf of Claybaugh in the location of the Nine-oh claim and the bad faith of Gancarz in the relocation of said claim preclude Gancarz from challenging the title of the good faith senior locator. The good or bad faith of the senior and junior locators was a real and important issue to be determined by the trial court.

It was error for the trial court to grant respondent's motion to strike appellant's location notice and his location certificate. They were important items in support of his good faith. It was also error for the court to refuse to hear evidence concerning the lease to respondent in existence at the time respondent relocated over appellant's claim. Such evidence was relevant and material with reference to the asserted bad faith of respondent.[3]

The trial court's explanation of its rulings that Claybaugh "had nothing to lease" simply begged the question —whether Claybaugh's Nine-oh was or was not a valid subsisting claim.

As the record contains ample evidence of the good faith of appellant in the location of the Nine-oh and bad faith of the respondent in relocating the claim as the Gancarz, no purpose will be served in remanding the case for new trial.

The foregoing is without intent to indicate that this court would not, in the absence of such element of the junior locator's bad faith, hold the senior locator to a substantial compliance with the requirements of the statute as amended in 1941.

The judgment is reversed with instructions to enter an order denying the defendant's motion to dismiss and to enter judgment in favor of the plaintiff in accordance with the prayer of his complaint.

McNamee, C. J., concurs.

---

[3]In the court below and in the briefs on this appeal the parties argue the applicability of the rule that a lessee may not question his landlord's title, in a suit to quiet title. It is unnecessary for us to determine this question in this appeal other than with relation to the question of the good faith of the respondent.

THOMPSON, J., concurring:

I understand the holding of today's case to mean that "substantial compliance" with the requirements of the statute governing the mandatory certificate of location will be accorded a broad and liberal meaning in favor of a senior locator in a suit against a bad faith junior locator—but that the same liberality will not prevail if the litigation does not disclose bad faith in the junior locator. Equity demands this result, and I am in accord with it, though I must confess that our liberal construction in this case comes very close to exceeding rational limits. The senior locator posted and recorded a document labeled a "notice of location." From its contents it cannot be clearly ascertained whether it was intended to be a permissive notice of location or the mandatory certificate of location. It contained more information than required by the permissive notice of location statute, but was deficient in fully satisfying the requirements of the mandatory certificate of location proviso. He also recorded a "proof of labor" which the majority treat (erroneously, I think) as a certificate of location. The information contained in the notice of location and the proof of labor, singly or in combination, does not fully meet the requirements of a certificate of location. Notwithstanding the apparent deficiencies, a court of justice cannot prefer a junior locator, who has acted in bad faith, over a senior locator who has been guilty of no greater sin than inadvertence. Were this not the situation before us, I would not hesitate to declare that the statute governing the mandatory recording of a certificate of location had not been substantially complied with.