[Civil No. 860.   Filed November 18, 1905.]

[83 Pac. 350.]

GEORGE A. TREADWELL et al., Plaintiffs and Appellants,
v. GEORGE O. MARRS, Defendant and Appellee.

1. MINES AND MINING—ADVERSE—LOCATION—CHANGE OF MONUMENTS—
EFFECT.—The erection of new monuments at points other than
where the original monuments were located, in the absence of the
filing of a new location certificate or an amendment of the old,
has no effect in changing the position and location or boundaries
of the claim, except in so far as it shows an abandonment of ground
within the original location but excluded from the ground remonu-
mented.

2. SAME—SAME—SURVEY—EVIDENCE—COMPETENCY.—Upon an adverse,
where the conflict as pleaded was based upon a survey and adverse
map made from a new monumenting of an old location, such survey
and map, and the evidence based thereon, showing a conflict, could
in no event be competent, unless the claim as originally located
was as to direction and course identical with the direction and
course as remonumented.

3. SAME — LOCATIONS — MONUMENTS—COURSES AND DISTANCES—WHEN
GOVERNING.—Where the location of a mining claim is in issue,
where the monuments are found upon the ground, or their position
or location can be determined with certainty, the monuments govern
rather than the location certificate; but where the courses and
distances are not with certainty defined by monuments or stakes, the
calls in the location notice must govern.

4. SAME—ADVERSE—CONFLICT—IDENTITY— EVIDENCE—SUFFICIENCY.—In
an adverse, evidence reviewed and held insufficient to show that the
conflict as testified to by the plaintiff's surveyor was based upon
a survey or plat of a claim which had the course or distances or
area of the plaintiff's claim.

5. SAME—SAME—EVIDENCE—STRIKING FROM RECORD.—In an adverse, tes-
timony of plaintiff's surveyor, upon which no judgment describing
the true conflict or awarding possession to the plaintiff could be
based, is properly stricken from the record.

APPEAL from a judgment of the District Court of the
Fourth Judicial District in and for the County of Yavapai.
Richard E. Sloan, Judge.   Affirmed.

On appeal to the United States Supreme Court.

Statement of facts:—

On April 11, 1901, George O. Marrs filed in the United States Land Office at Prescott his application for a patent to the Copper Link mining claim. George A. Treadwell and F. C. Beckwith filed an adverse to such application, and within the time prescribed by law brought this action in support of such adverse. Judgment was given in the court below for Marrs, and from this judgment Treadwell and Beckwith have brought this appeal.

The complaint alleged the citizenship of the plaintiffs, the location of the claim, and the performance of the acts necessary to complete the validity of such location, the acquisition of the claim by the plaintiffs by mesne conveyances, the ownership of the property in the plaintiffs of the claim as monumented and as shown by the adverse map attached to the complaint, and the performance by the plaintiffs of the annual assessment work on the claim. The complaint further alleged that the pretended location of the Copper Link mining claim by the defendant was null and void by reason of the fact that the ground was not open to location, so far as it conflicted with the Buster claim. The complaint further set up the filing of the adverse, and the bringing of the suit in support thereof, and described the conflict according to the adverse map as follows: "Beginning at the southeast corner of the Buster mining claim, thence north, 50 deg. west, 430.7 feet, to a point of intersection on the west side line of said Copper Link mining claim; thence north, 27 deg. 44 min. east, 679.4 feet, to a point of intersection on the west side of said Buster mining claim; thence north, 40 deg. east, 713.7 feet, to a point of intersection on the north end line of said Copper Link mining claim; thence south, 62 deg. 16 min. east, 364.2 feet, to a point of intersection on the north end line of said Copper Link mining claim; thence south, 50 deg. east, 86.1 feet, to a point of intersection on the east side line of said Copper Link mining claim; thence south, 27 deg. 44 min. west, 625.8 feet, to a point of intersection on the east side line of the Buster mining claim; thence south, 40 deg. west, 843.5 feet, to the place of beginning—containing 16.855 acres."

The adverse map attached to the complaint was as follows:—

The answer was a general denial, and contained allegations that the original monuments of the Buster claim had been removed by the plaintiffs prior to the location of the Copper Link, so that the boundaries of the Buster claim could no longer be traced upon the ground; that the claim had been abandoned by the plaintiffs, and that the land embraced within the boundaries of the Copper Link was open to location at the time of its location by the defendant. It alleged the acts necessary to constitute a valid location of the Copper Link claim by the defendant, the ownership thereof, and contained certain other allegations, not necessary to be set forth, and prayed for affirmative judgment for the defendant.

The evidence introduced upon the trial showed that in September, 1875, the claim known as the "Buster Mining Claim" was located by J. M. Roberts, T. W. Boggs, and D. R. Poland, who erected the necessary monuments on the

ground to mark the boundaries, and posted and recorded a location notice, as follows: "Buster lode notice of location. This ledge is located on a copper ledge or claim, commencing at a monument 200 feet north this notice, and runs 1,300 feet south to a monument, 1,300 feet from this notice, with 300 feet on each side of the vein. This ledge is in the Bradshaw Mountain, and about two miles from the Peck mine, and between the canyon of Turkey Creek and Crazy Basin, and was located by us September 24, 1875, all in Yavapai County, Arizona Territory. [Signed] J. M. Roberts, T. W. Boggs, D. R. Poland. This notice recorded November 20, 1875, at 12:30 o'clock P. M., at the request of D. R. Poland, and recorded in Book C-3 of Mines, records of Yavapai County, Arizona Territory, at page 448. William Wilkerson, County Recorder." The title of the locators to the claim passed to the plaintiffs by purchase in 1892. Soon after the purchase by the plaintiffs, Erwin D. Treadwell, a son of one of the plaintiffs, as their agent, went upon the ground, together with Boggs, one of the original locators, and was informed by Boggs that a large stone monument at a point near the summit of what was known as "Buster Hill," was the location monument, and, as Treadwell understood, also the center monument of the Buster claim. Treadwell shortly thereafter, relying upon the information given him by Boggs, starting from this monument as the center monument of the claim, made search for the other monuments of the claim for a distance of seven hundred and fifty feet north and south from such initial monument, but found none which he regarded as connected with the Buster claim. He thereafter, for the purpose of outlining the Buster claim, in order to make new locations, on either end of the claim built a monument approximately seven hundred and fifty feet in a northeasterly direction along the vein from the center monument, and another approximately seven hundred and fifty feet in a southwesterly direction from the center monument, and about in line with the center monument of the claim. His courses were north, forty degrees east, and south, forty degrees west, respectively. He then built four corner monuments on the north and south end lines, approximately three hundred feet distant in each direction from the north and south end center monuments, and then located several other claims contiguous to, and

limited by, the boundaries of the Buster as he understood
them. The plaintiffs remained in possession of the property,
and spent money thereon continuously from that time until
1899. After the filing of this adverse suit, it was discovered
for the first time by Treadwell and by the plaintiffs that the
location notice of the Buster claim called for a claim starting
from a point two hundred feet north of the initial monument,
and not seven hundred and fifty feet, as supposed by Tread-
well, and running south thirteen hundred feet, and not seven
hundred and fifty feet, and that the monument pointed out by
Boggs to Treadwell, instead of being in the center of the claim,
as originally located, was located as being two hundred feet
from the north end, and thirteen hundred feet from the south
end, and that the call of the location notice was for a claim
running north and south, and that the monuments, therefore,
erected by Treadwell did not correspond to the calls of the
location notice. In March, 1901, Treadwell found a monu-
ment about two hundred feet in a northeasterly direction from
the initial monument pointed out to him by Boggs. In June,
1901, a survey and the adverse map were made on behalf of
the plaintiffs by the surveyor, Merritt, from the monuments
erected by Treadwell, as pointed out by him to the surveyor,
and the conflict, as set out in the complaint, calculated there-
from. The testimony further showed that the claim as sur-
veyed and platted by Merritt did not conform to the original
Buster location, either as originally monumented or described
in the location notice, but as surveyed and platted was the
ground monumented by Treadwell in 1893. As so surveyed
and platted, it included ground in its northerly end which
was neither included in the location notice, nor included in
the original boundaries of the claim as defined by the original
monuments.

Over the objection of the defendant, the plaintiffs at-
tempted to prove by the testimony of the surveyor, Merritt,
a conflict, not as set forth in the complaint, or as shown by
the adverse map, or the boundaries as monumented by Tread-
well, but based upon the assumption that the north center end
monument of the Buster claim was two hundred feet north,
forty degrees east, from the initial monument, and the south
end monument seven hundred and fifty feet south, forty de-
grees west, and contained ten and a fraction acres, as against

IX Ariz.—22

sixteen and a fraction, as shown by the adverse map and plat. The testimony was subsequently stricken out by the court, on motion of the defendant, and a map showing such conflict, from which the surveyor testified, and which was made in 1903, just prior to the second trial of the case, was also excluded. This conflict map followed the lines of the adverse map, and was the same as the latter, except that the north end line of the Buster was shown by a new line, supposed to intersect a point two hundred feet north, forty degrees east, from the initial monument. The map so excluded follows:—

The testimony of Merritt was the only testimony showing the boundaries and the extent of the conflict. It was admitted that the defendant was a citizen of the United States, and that he had duly performed all the acts necessary to consti-

tute a valid location of the Copper Link claim. The court found that the adverse map was not made from any survey of the Buster claim, either as located on the ground or described in the location notice; that it did not show the boundaries, courses, distances, or extent of the ground included in the Buster claim, and did not show wherein, if at all, the Buster claim, as monumented on the ground, or as described in the location, conflicted with the Copper Link location; and that the plaintiffs' proof failed to sustain the allegations of the complaint of the conflict relied upon, and gave judgment for the defendant for the ownership of, and possession of, the Copper Link claim, and quieting his title thereto, from which judgment the plaintiffs have appealed to this court.

H. M. Hubbard, and R. E. Morrison, for Appellants.

Mining ground once located does not again become open and unoccupied. There must be some overt act from which a deliberate intention to abandon can be inferred, and in seeking to determine whether or not mining ground once located has been abandoned within the legal meaning of the term the intention of the parties is the paramount subject of inquiry. *Dodge* v. *Marden*, 7 Or. 456; *Derry* v. *Ross*, 5 Colo. 295; *Mallet* v. *Uncle Sam Mining Co.*, 1 Nev. 188, 90 Am. Dec. 484; *Myers* v. *Spooner*, 55 Cal. 257; *Justice Mining Co.* v. *Barclay*, 82 Fed. 554; *Valcada* v. *Silver Peak Mines*, 86 Fed. 90, 29 C. C. A. 591; *Kinney* v. *Fleming*, 6 Ariz. 263, 56 Pac. 723; *Lakin* v. *Sierra Buttes Mining Co.*, 25 Fed. 337.

In case of variance between the courses and distances called for by the location notice and the monuments on the ground, the monuments control. *Pollard* v. *Shively*, 5 Colo. 309; *Book* v. *Justice Mining Co.*, 58 Fed. 106; *Hoffman* v. *Beecher*, 12 Mont. 489, 31 Pac. 92; *Cullacott* v. *Cash G. S. M. Co.*, 8 Colo. 179, 6 Pac. 211; *McEvoy* v. *Hyman*, 25 Fed. 596; *Smith* v. *Newell*, 86 Fed. 56; *Meydenbauer* v. *Stevens*, 78 Fed. 787.

The boundaries of a claim may be proved by evidence that the monuments were at one time erected at given places. Proof of their former existence as an aid in determining the boundaries of a mining claim, disputed or otherwise, when the monuments themselves cannot be found, may be supplied, and the rule as to the relative weight to be given courses and distances and monuments applies with undiminished force,

even though the monuments themselves cannot be found, if sufficient proof of their former existence is furnished. The monuments need not be unquestioned. *Lodge* v. *Barnett,* 46 Pa. St. 484; *Opdyke* v. *Stephens,* 28 N. J. L. 89; *McEvoy* v. *Hyman,* 25 Fed. 594; *Jupiter* v. *Bodie M. Co.,* 11 Fed. 666, 7 Saw. 96.

Assuming that the monuments put up by the original locators are the only ones that can be considered in determining the boundaries of the Buster claim, it must be clear that the plaintiff's title to this particular portion of the claim, as originally located, cannot be successfully assailed on the ground that the entire location was vitiated by reason of the attempted substitution of five hundred and fifty feet on the north for the same amount of ground on the south. In the first place, such substitution did not create an excess of ground, and, in the second place, if it had, the excess would not render the whole location void, but the location would only be bad as to the excess. *Richmond M. Co.* v. *Rose,* 114 U. S. 576, 5 Sup. Ct. 1055, 29 L. Ed. 273; *Glacier Mt. S. M. Co.* v. *Willis,* 127 U. S. 471, 8 Sup. Ct. 1214, 32 L. Ed. 172; *Lakin* v. *Dolly,* 53 Fed. 333; *Taylor* v. *Parenteau,* 23 Colo. 368, 48 Pac. 505; *Stephens* v. *Wood,* 39 Or. 441, 65 Pac. 602; *Hansen* v. *Fletcher,* 10 Utah, 266, 37 Pac. 480; *McIntosh* v. *Price,* 121 Fed. 716, 58 C. C. A. 136.

Herndon & Norris, for Appellee.

The character of an adverse, its form, the time for its institution, and the force and effect of a judgment are all definitely prescribed and limited. U. S. Stats., secs. 2323-2326; *Gird* v. *California Oil Co.,* 60 Fed. 531; *Doe* v. *Waterloo Mining Co.,* 43 Fed. 221; *Wolverton* v. *Nichols,* 119 U. S. 488, 7 Sup. Ct. 289, 30 L. Ed. 474; *Gwillim* v. *Donnellan,* 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348.

Each party is an actor, and must establish his claim by proof. Each must plead citizenship, discovery, proper location, monumenting, and the maintenance of the claim, as prescribed by law. *Gird* v. *California Oil Co., supra; Allyn* v. *Schulz,* 5 Ariz. 152, 48 Pac. 960; *Lee Doon* v. *Tesh,* 68 Cal. 43, 8 Pac. 621, 6 Pac. 97; *Rosenthal* v. *Ives,* 2 Idaho, 265, 12 Pac. 905; *Manuel* v. *Wulf,* 152 U. S. 505, 14 Sup. Ct. 651, 38 L. Ed. 532.

The Buster notice of location should have been rejected for the reason—1. That it is insufficient in that it does not contain such a description of the claim by reference to such natural objects or permanent monuments as will identify the claim; 2. It is insufficient in fact because it does not appear that the claim called for was distinctly marked on the ground so that its boundaries could be readily traced; and 3. The further fact that it is shown that the position of the claim could not actually be located by the references made in the notice. *Patterson* v. *Tarbell,* 26 Or. 29, 37 Pac. 76; *Hansworth* v. *Butcher,* 4 Mont. 299, 1 Pac. 714; *Dillon* v. *Bayles,* 11 Mont. 171, 27 Pac. 725; *Faxon* v. *Barnard,* 4 Fed. 702, 9 Morr. Rep. 515; *Gilpin County M. Co.* v. *Drake,* 8 Colo. 586, 9 Pac. 787.

The trial court committed no error in striking out testimony of Merritt relating to an area claimed to be in conflict with the Buster as described by a map made by Merritt over two years after the adverse, which assumed the north center end of the claim as being north forty degrees east two hundred feet from its initial monument. *Pollard* v. *Shively,* 5 Colo. 316; *Golden Fleece* v. *Cable etc. Co.,* 12 Nev. 312.

KENT, C. J. (after stating the facts).—It is contended by the appellee that the location certificate of the Buster claim was insufficient. both in law and in fact, and that the appellants could acquire no rights thereunder. The trial court held the certificate to be sufficient on its face, and found against the appellee in his contention that the evidence introduced upon the trial showed that the statements of the certificate as to the position of the claim were untrue in fact.

We do not deem it necessary on this appeal to pass upon the correctness of either of the court's rulings in this respect, as we are of the opinion that the record and the evidence in the case did not warrant a judgment in favor of the plaintiffs. This is an adverse suit, in which the plaintiffs seek to establish their right to possession of that portion of the Buster claim in conflict with the Copper Link. The only testimony that showed the boundaries, area, and extent of such alleged conflict, and upon which the court could base a judgment of right of possession therein in favor of the plaintiffs, was the testimony of the surveyor, Merritt. This

testimony the trial court ordered stricken out. Without this testimony, the plaintiffs could not recover, and the correctness of the court's ruling in this respect is the controlling question determinative of this appeal.

The situation before the court was this: The plaintiffs were the owners of the Buster claim, having acquired it some seventeen years after its location. In the supposition that they were correctly tracing the boundaries of the claim, and approximately the position of the old monuments, shortly after acquiring the claim, they erected two new center end monuments and four corner monuments; the course and direction of the claim as so monumented being north, forty degrees east, and south, forty degrees west. Eight years thereafter, the defendant filed his application for a patent, and the plaintiffs their adverse, and commenced this, their adverse, suit, in which they alleged a conflict based upon the position of the Buster as supposed and as monumented by Treadwell for them. After the adverse suit was brought, but prior to the trial, the plaintiffs discovered that the Buster as monumented by them did not conform with the calls of the location certificate of the claim, either as to direction or extent, or with the old monuments as the claim was originally located. On the trial the plaintiffs admitted that they must be held to have abandoned that portion of the Buster called for in the location certificate which lay south of the new south end line as shown by the monuments erected by them on the supposed south end line of the claim,—to wit, some five hundred and fifty feet,—but claimed that they were entitled to that portion of the Buster as shown by the original monuments to be within the area of the conflict as alleged in the complaint. The theory of the plaintiffs was that the evidence showed that the original north center end monument, instead of being seven hundred and fifty feet north, forty degrees east, from the initial monument as shown by their adverse map and survey, was in fact two hundred feet north, forty degrees east, and that the original south center end monument, instead of being seven hundred and fifty feet south, forty degrees west, as shown by their adverse map and survey, was thirteen hundred feet south, forty degrees west; and they claimed the right to the possession of the ground where it conflicted, comprised in a claim, the north center end monument of which

was two hundred feet north, forty degrees east, of the initial monument, and the south center end monument of which was seven hundred and fifty feet south, forty degrees west, or the area as shown by the portion of the claim in the excluded conflict map, which is southwest of the heavy line drawn across the claim. This conflict they sought to prove by ·the testimony of Merritt, the surveyor. The trial court heard this testimony under objection, and subsequently ordered it stricken out. The erection of the monuments by the plaintiffs through their agent, Treadwell, had no effect in changing the rights of the plaintiffs, or in changing the position and location or boundaries of the claim, except in so far as it showed an abandonment of the southerly portion of the claim. No new location certificate was filed, and no amendment of the old was attempted. The claim remained, therefore, as originally located. But the adverse and the conflict, as pleaded, was based upon a survey and adverse map made by the surveyor from the monuments as erected by Treadwell. Manifestly, then, such survey and map, and the evidence based thereon, showing a conflict, could in no event be competent, unless the claim as originally located was as to direction and course identical with the direction and course as monumented by Treadwell.

Passing by, without determining it, the question whether an attempt to prove such a conflict was not such a departure as in any event would render such proof inadmissible, we think the trial court rightly excluded the evidence introduced to show the conflict. The Treadwell monuments being valueless, in order to make the survey of Merritt and his testimony as to the conflict based thereon competent evidence, it was incumbent upon the plaintiffs to show that the claim as originally located was in accord with such survey to the extent of the conflict claimed. The claim as surveyed by Merritt ran north and south, forty degrees east and west, respectively. The location notice calls for a claim running north and south; manifestly, not the same. The plaintiffs contend that this location certificate ought not to be construed, however, as calling for the north and south end monuments as due north and south, but should be construed as permitting the location of these monuments, the one two hundred feet north, forty

degrees east, and the other approximately thirteen hundred feet southerly, but in a line forty degrees west from a north and south line; claiming that the evidence shows the existence at each of said points of the original north and south end monuments. The well-settled rule in that respect is that, where the monuments are found upon the ground, or their position or location can be determined with certainty, the monuments govern, rather than the location certificate; but where the course and distances are not with certainty defined by monuments or stakes, the calls in the location notice must govern and control. In the case before us, however, the plaintiffs must not only show the existence and location of these monuments in order for them to control as against the location certificate, but, in order to enable them to be entitled upon their adverse to the possession of the ground alleged to be in conflict, they must establish the position of these north and south end monuments to be in fact the one two hundred feet north, forty degrees east, and the other to be south, forty degrees west, of the initial monument; for if these monuments are not so in fact located, then the course and distances and boundaries of a claim based upon them, which would be the true Buster claim, would not correspond with the course and distances and boundaries of the claim as surveyed and platted by the surveyor, Merritt, and his testimony as to the conflict would not describe the true conflict between the Buster and the Copper Link.

It becomes necessary, therefore, to examine the testimony given with respect to the existence and location of these monuments. The only testimony in regard thereto is the testimony of the witnesses Boggs, Treadwell, Powers, and McDonald. The witness Boggs, who was one of the locators of the claim, testified: " . . . Another [monument] was built a short distance northerly from there [the initial monument]. They stepped it off. It looked like 400 or 500 feet, and in a southerly direction another monument was built about 1,000 or 1,200 feet; I cannot tell exactly." The witness Treadwell, the agent of the plaintiffs, testified: " . . . After that survey [in 1900], I was on the ground at a point about 200 feet in a northeasterly direction from the center monument, and saw a monument there in line with the center monument and with the monument at the north center end of the Buster,

erected by me, I should judge. This was also about in line with the south center end monument erected by me, and the center monument, but you could not see between them. The course we took was south, 40 degrees west. The last monument I have described was about 200 feet in a northeasterly direction from the center monument. The monument that Mr. Boggs pointed out to me, . . . I understood him to point it out as the center monument, and also the location monument. . . . In the fall of '93 I placed some monuments on the property. I did it, in the first place, to outline the Buster, in order to make the locations on either end, as I was requested to make two locations. . . . I went 750 feet northeasterly from the monument pointed out by Mr. Boggs, because I understood from him that that was the center monument of the claim. There was no location notice in the monument advising where to go. I looked for one, and I am sure it was not there. I had nothing to guide me in placing the monuments, except what I was informed by Mr. Boggs. I don't think Mr. Boggs told me where to find the other monuments—what course and distance to go. He gave me the general course and the way the ledge ran. I went 750 feet northerly, 40 deg. east, because that was the general course of the formation. I followed the ledge, and was guided by that in taking the course. . . . It was in March, 1901, that I saw the monument of which I have spoken, about 200 feet northeasterly of the location monument. I don't know whether it was there in June, 1900. I did not see it. I went over the ground. . . . I went with Mr. Merritt. I asked him to make the survey, and he obtained his own location notice. I did not particularly look for monuments upon the ground in accordance with that notice with Mr. Merritt. I pointed out the monuments I had erected, and asked him to make a survey of these monuments." R. C. Powers, a witness, testified: "In June, 1900, I was a deputy U. S. mineral surveyor, and in that month made a survey of the Buster. . . . I remember going in a northerly direction from this location monument on the mountain, looking over the ground up to the 750-foot point. I cannot recollect that I found any kind of monuments between that location monument and the 750-foot monument at that time. . . . There were no intermediate monuments." McDonald, a witness, testified: "Within

the last two years I found a monument about 1,200 or 1,400 feet from the location monument, in a southwesterly direction from the location monument. . . . It was an old monument. I also found about 200 feet northeast, and in line with the initial monument, the remains of an old monument, the rocks considerably imbedded in the ground, and grass grown up around them. These three monuments were practically in line. I can't remember just when I saw these. It was just before the first adverse came to trial. It was when we discovered that the location notice only called for 200 feet to the north, and we started a search for these monuments, discovering this old one in the center.'' Boggs, on the former trial of the case, testified: ''The monument about 200 feet in a northeasterly direction was not very large. It was made out of stone. We could hardly see it. The brush had grown up. I saw these three monuments when I went out with Mr. Middleton, about two years ago. Just after the trial, I think, these three monuments looked to be about where the original monuments were placed by me in '75, as near as I could recall. . . . I didn't go any farther, only went down that 200 feet to the north monument, and walked down there with him and back. . . . I saw Mr. McDonald and Mr. Middleton go over to a monument in a southwesterly direction from the location monument. I thought it was about 1,000 or 1,200 feet distant.''

The testimony of the surveyor, Merritt, which was stricken out by the court, showed that in making his survey he did not go to either of the monuments now claimed to be the original north and south end center monuments of the claim. In describing the conflict, however, he starts from a point two hundred feet north, forty degrees east. He stated that after the survey, and just prior to the second trial of the case, he went upon the ground, and ran a line from the initial monument two hundred feet north, forty degrees east, but he does not state that he found any monument there; and nowhere in the case is there any testimony to show either that the north end monument is in fact situated at a point two hundred feet north, forty degrees east, from the initial monument, or that the south end center monument is in fact situate at a point 1,300 feet, or any other number of feet, south, forty degrees west; nor is there any testimony that any sur-

veyor has run a line from the initial monument to either of these monuments, or surveyed them; nor any testimony to show that they, or either of them, are in a line forty degrees east and west, respectively, from the north and south line, or what is the correct course or distances of them, or either of them, from the initial monument.

The trial court held as a fact that the testimony did not . show that the monuments seen by the witnesses, as described by them, were the original monuments of the Buster. If the determination of the case depended upon this alone, we should feel inclined to hold that the testimony was sufficient to show that the north center end monument, as described by the witnesses, was one of the original monuments of the claim; but we are entirely in accord with the trial court in its holding that there is no evidence to show that these monuments were located, the one two hundred feet, or any other distance, north, forty degrees east, and the other south, forty degrees west, of the initial monument. Without this proof, there was nothing before the court .to show that the conflict as testified to by Merritt was based upon a survey or a plat of a claim which had the course or distances or area of the Buster. No judgment describing the true conflict, or awarding possession to the plaintiffs, could be based upon his testimony, and the trial court was right in striking it from the record.

The judgment of the district court will be affirmed.

DOAN, J., and CAMPBELL, J., concur.